Glenn W. VICKERY, Appellant,

v.

**COMMISSION FOR LAWYER DISCIPLINE, Appellee.**

No. 14–97–00586–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Aug. 19, 1999.

Rehearing Overruled Nov. 18, 1999.

Edmund L. Cogburn, J. W. Beverly, Houston, for appellant.

William Emil Minkley, Austin, Ann Whitley Wood, Dallas, Linda Acevedo, Austin, for appellee.

Panel consists of Justices HUDSON, WITTIG and LEE.*

* Senior Justice Norman Lee sitting by assignment.

## OPINION

J. HARVEY HUDSON, Justice.

The Commission for Lawyer Discipline [hereafter referred to as the "Commission"] brought a disciplinary action against appellant, Glenn W. Vickery. After considering the evidence and testimony before him, the trial judge found Vickery had violated multiple provisions of the Texas Disciplinary Rules of Professional Conduct and suspended him from the practice of law for two years, probated all but three months of the suspension, and ordered him to pay $50,000 in attorney fees. We affirm.

Glenn Vickery, while married to his wife, Helen, enjoyed a very successful law practice. During their marriage, Glenn and Helen Vickery acquired several residences, extensive artwork, a multimillion dollar annuity, and numerous other assets. In 1986, however, one of Vickery's clients sued him for malpractice. Fearing a possible judgment would exceed the policy limits of his malpractice insurance, Vickery told his wife, in 1990, that their personal assets were in danger. At that time, Vickery proposed a divorce. He explained to Helen that a divorce would allow them to shield half their assets from any judgment arising out of the malpractice claim.

Helen did not favor the idea of a divorce for a least two reasons: (1) Helen believed she and Glenn had a happy marriage, and (2) they had a daughter, Jessica. Vickery told Helen the arrangement was necessary purely to protect their assets. Moreover, by filing the divorce in Harris County, instead of Liberty County where they were living at the time, Vickery promised to keep the proceeding quiet. He also promised to reunite as soon as the malpractice suit was concluded. Vickery even recited some of their friends as examples of couples who had allegedly employed this very technique to protect their own assets. Because Helen had always allowed Vickery to take the lead in managing their financial and legal affairs, she reluctantly agreed to the divorce.

Helen did not initially retain counsel to represent her in the divorce. Rather, Vickery asked a friend and colleague, Dianne Richards, to represent Helen in the proceeding. Vickery candidly told Richards that he and Helen wanted a divorce to protect their assets, and he instructed Helen to send Richards a retainer. Following Vickery's instructions, Richards filed the divorce petition before receiving Helen's check and without consulting her "client" to see whether she even wanted a divorce. In fact, Richards had little, if any, contact with Helen. The record suggests Richards acted solely at Vickery's direction: (1) Richards gave Vickery a divorce form to modify; (2) Vickery modified the form and returned it to Richards; (3) Richards incorporated the changes and filed it with the clerk; (4) Richards never contacted Helen to see whether she agreed with the property division; and (5) Richards never conducted any investigation to determine whether the division was fair and equitable.

Vickery instructed Helen that, for the sake of appearances, they would have to live apart from each other until the malpractice action had been resolved. He suggested that his wife and daughter should remain on their Moss Hill Ranch in Liberty County while he moved into one of their other residences in Harris County. Then, at Vickery's behest, Richards prepared and filed Vickery's amended answer and cross-petition. Trusting her husband's judgment, Helen did not attend the court proceeding. Only Richards and Vickery appeared at the hearing, and the divorce decree was obtained on Vickery's testimony alone.

After the decree was final, the pretended divorce became all too real. First, Helen discovered that Vickery had married one of her close friends, Lucille. Second, Vickery immediately instituted an action to evict his former wife and daughter from the Moss Hill Ranch where they had lived

during the marriage. Third, Helen discovered that significant assets had not been included in the property division. Realizing she had been defrauded by her husband, Helen retained counsel and filed a bill of review to overturn the divorce decree.

After Helen filed the bill of review, Vickery asked Allyn Hoagland, a lawyer with whom he shared office space, to convey a substantial settlement offer directly to Helen without the knowledge of her attorney. Although both Vickery and Hoagland were aware that Helen was represented by counsel, Hoagland instructed Helen not to contact her lawyer. He also suggested that if she did not accept the offer, Vickery might try to have her arrested and prosecuted for an alleged burglary of his Baytown townhouse. Notwithstanding this threat, Helen refused the offer. She subsequently obtained a multimillion dollar verdict against Vickery. She also filed a complaint with the Disciplinary Committee which ultimately resulted in the suspension being appealed here.

## COMMUNICATION WITH ONE REPRESENTED BY COUNSEL

The trial court concluded that Vickery violated Disciplinary Rule 4.02(a) which states:

In representing a client, a lawyer shall not communicate or cause or encourage another to communicate about the subject of the representation with a person, organization or entity of government the lawyer knows to be represented by another lawyer regarding that subject, unless the lawyer has the consent of the lawyer or is authorized by law to do so.

TEX. DISCIPLINARY R. PROF'L CONDUCT 4.02(a). In support of this portion of its judgment, the trial court made the following finding of fact:

In November 1992, Glenn Vickery induced a friend and colleague of his, Allyn Hoaglund, to contact Helen Vickery, knowing she was represented by counsel, and to set up a meeting with her to discuss the case.

In his first point of error, Vickery contends this finding does not support the judgment because the court failed to make findings on two elements of Rule 4.02(a), namely, that at the time the communication was made, Vickery (1) was representing a client, and (2) did not have the consent of Helen's lawyer. The Commission concedes the court made no findings regarding the aforementioned elements, but claims such findings may be implied under Rule 299 of the Rules of Civil Procedure. Vickery, however, argues that no implied findings in support of the judgment can be made here because only "omitted *unrequested* elements" may be implied on appeal. *See* TEX.R. CIV. P. 299. Vickery asserts that after the trial court made findings of fact, he *requested* additional, albeit *negative*, findings on the omitted elements in question. In other words, Vickery asked the court to find the communication was not made in the context of representing a client or without the consent of Helen's attorney.[1] Because the court made no additional findings and Rule 298 states that "[n]o findings or conclusions shall be deemed or presumed by any failure of the court to make any additional findings or conclusions," Vickery contends

---

1. Vickery's request for additional findings included the following proposed findings:

 35. Allyn Hoagland did not act as attorney for Glenn in contacting Helen in November 1992.

 36. Neither did Allyn act as agent or employee of Glenn in contacting Helen in November 1992.

 * * *

 38. In connection with his discussions with Allyn about contacting Helen in

 November of 1992, Glenn did not, at any time, represent a client, being, himself, represented by his own attorney, Burta Raborn.

 * * *

 41. When Helen met with Allyn in November, 1992, to discuss the civil lawsuit filed by her against Glenn, it was with the knowledge and consent of her attorneys.

we are expressly prohibited by both Rules 298 and 299 from presuming the trial court made any implied findings in support of its judgment. *See* Tex.R. Civ. P. 298.

Rules 298 and 299 were spawned by a general presumption of validity accorded judgments of a court of general jurisdiction. For the reasons stated below, we find Vickery's interpretation of these rules to be antithetical to a general presumption of validity and contrary to both public policy and logic.

### Public Policy Favors the Presumption of Validity

 Public policy favors the validity of judgments. *See Crawford v. McDonald,* 88 Tex. 626, 33 S.W. 325, 328 (1895). Thus, there is a general presumption of validity extending to the judgments of courts of general jurisdiction. Without such a presumption, a court's judgment would have very little import and "there would be no end to troublesome litigation." *See Williams v. Tooke,* 116 S.W.2d 1114, 1120 (Tex.Civ.App.-Texarkana 1938, writ dism'd).

> [A] judgment, the final action taken by a court of competent jurisdiction in disposing of matters properly before it, is of such solemn import and of such supreme importance that every intendment should be given it in order to sustain its validity, that to give further emphasis to the thought would be almost a matter of triteness. Judgments constitute the considered opinion of courts; they are judicial acts with the primary objective in view of concluding controversies with as high a degree of exact justice as it is humanly possible to do. When an attack is made upon a judgment, whether directly or collaterally, all presumptions consonant with reason are indulged in order to uphold the binding effect of such judgment.

*Jackson v. Slaughter,* 185 S.W.2d 759, 761 (Tex.Civ.App.-Texarkana 1944, writ ref'd w.o.m.).

 Moreover, the presumption of validity extends to judgments derived with or without the benefit of a jury. In fact, the presumption of validity is perhaps even stronger in a bench trial where an experienced judge exercises the functions of a jury and is charged with the responsibility of assessing the credibility of the witnesses, logically evaluating the evidence, rationally resolving factual disputes on the basis of such evidence, and correctly applying the law to the facts. *See Mortensen v. Mortensen,* 186 S.W.2d 297, 299 (Tex. Civ.App.-San Antonio 1945, no writ); *Meyers v. Baylor University,* 6 S.W.2d 393, 395 (Tex.Civ.App.-Dallas 1928, writ ref'd). These things the trial court is presumed to have done because the judge is assumed to have conscientiously done his duty. *See Barnes v. Raymer,* 214 S.W.2d 341, 343 (Tex.Civ.App.-Eastland 1948, no writ).

 The presumption of validity is applied on appeal in inverse relation to the amount of knowledge available to the appellate court. Where the record is ambiguous or silent, the presumption of validity will supply by implication every proof, element, factual finding, or proper application of the law needed to support the judgment. Thus, where there is neither a reporter's record nor findings of fact, the appellate court will assume the trial court heard sufficient evidence to make all the necessary findings needed to support its judgment. *See State v. Gamble,* 692 S.W.2d 200, 202 (Tex.App.-Fort Worth 1985, no writ).

 When the reviewing court has the benefit of a detailed record, sufficiency of the evidence is no longer presumed. However, the presumption of validity still operates to resolve all other ambiguities in favor of the judgment. Accordingly, if the trial court files no findings of fact and conclusions of law, all findings necessary to the court's judgment, if supported by the record, will be implied.[2] *See North East*

---

2. A trial court has no duty to make findings of fact unless requested by a party to do so. *See*

*Tex. Motor Lines v. Dickson,* 148 Tex. 35, 219 S.W.2d 795, 796 (1949); *Campbell v. Stover,* 101 Tex. 82, 104 S.W. 1047, 1048 (1907); *Herter v. Wolfe,* 961 S.W.2d 1, 3 (Tex.App.-Houston [1 st Dist.] 1995, writ denied). In such cases, the judgment will be affirmed if it may be upheld on any basis that has support in the evidence under any theory of law applicable to the case. *See Worford v. Stamper,* 801 S.W.2d 108, 109 (Tex.1990); *Rodriguez v. Major Inv., Inc.,* 747 S.W.2d 556, 557 (Tex.App.-Corpus Christi 1988, no writ); *Lambda Const. Co. v. City of Alice,* 729 S.W.2d 377, 381 (Tex.App.-San Antonio 1987, no writ).

▪ The presumption of validity is only prima facie, of course, and may be rebutted. *See Trapp v. Atlantic Refining Co.,* 170 S.W.2d 506, 509 (Tex.App.-Austin 1943, writ ref'd). However, because the presumption is always in favor of the validity of the judgment, the burden of demonstrating error rests upon the appellant. *See Miller v. Hood,* 536 S.W.2d 278, 285 (Tex.Civ.App.-Corpus Christi 1976, writ ref'd n.r.e.); *see also Anderson v. Roberts,* 35 S.W. 416, 417 (Tex.Civ.App.1896, no writ) (holding that it is incumbent upon the appellant to allege facts which, if established in the record, will overcome the presumption of validity). Accordingly, an important predicate for a successful appeal is to establish what facts were found by the trial court.

▪ To limit the scope of the presumption, it is advantageous to the appellant to narrow the issues on appeal by requesting findings of fact and conclusions of law.[3] These written findings are equivalent to a jury verdict on special issues and permit the parties, as well as the reviewing court, to ascertain the true basis for the trial court's decision. *See Lindner v. Hill,* 673 S.W.2d 611, 614 (Tex.App.-San Antonio 1984), *aff'd,* 691 S.W.2d 590 (Tex.1985).

Tex.R. Civ. P. 296 & 297.

▪ While findings of fact serve to limit the issues on appeal, the presumption of validity is not extinguished *ipso facto* by the existence of such findings. In a case tried before the court without a jury, in which there are findings of fact and conclusions of law, the reviewing court will indulge every reasonable presumption in favor of the findings and judgment of the trial court, and no presumption will be indulged against the validity of the judgment. *See Walker v. Thetford,* 418 S.W.2d 276, 285 (Tex.Civ.App.-Austin 1967, writ ref'd n.r.e.); *Kost Furniture Co. v. Radio Equip. Co.,* 100 S.W.2d 162, 163 (Tex.Civ. App.-Amarillo 1936, writ dism'd).

### *Implied Findings Rebutted by Deliberate Omissions*

▪ When a court makes findings of fact, but inadvertently omits an essential element of a ground of recovery or defense, the presumption of validity will supply the omitted element by implication. However, if the record demonstrates the trial judge deliberately omitted the element, the presumption is refuted and the element cannot logically be supplied by implication. Thus, when an essential element in support of the trial court's judgment is omitted from the court's findings, an issue is presented as to whether or not the omission was deliberate or inadvertent.

▪ If a ground of recovery or defense is *entirely* omitted, i.e., if the trial court omits every element of the particular ground of recovery or defense, this is some evidence the court did not rely on the ground or defense in reaching its decision. In such case, the omission is deemed to be deliberate; "[t]he judgment may not be supported upon appeal by a presumed finding upon any ground of recovery or defense, no element of which has been included in the findings of fact...." Tex.R. Civ. P. 299.

**3.** *See* Richard Orsinger, *Findings of Fact and Conclusions of Law, in* 6 Texas Civil Practice § 18:3 (1992 ed.).

■ However, where the court specifically finds one or more elements of a ground of recovery or defense, this fact constitutes some evidence the court relied upon the ground or defense in reaching its decision. In such case, the omission of some of the elements of a ground of recovery or defense is deemed to be inadvertent. Thus, "when one or more elements thereof have been found by the trial court, omitted unrequested elements, when supported by evidence, will be supplied by presumption in support of the judgment." *Id.*

■ However, if the court omits an element that has been "requested," the court's action may suggest the omission was deliberate, rather than inadvertent. In other words, where the trial court has been specifically requested to make a particular finding in support of its judgment and it fails to do so, the failure is tantamount to a refusal. *See Stretcher v. Gregg*, 542 S.W.2d 954, 958 (Tex.Civ.App.-Texarkana 1976, no writ). Thus, the presumption of validity will not supply by implication a missing element that has been specifically "requested." *See* Tex.R. Civ. P. 299.

### Notice to the Trial Court and the Requirement of a "Specific" Request

■ As we have previously noted, where an essential element of a ground for recovery or defense is *inadvertently* omitted from the court's findings, it will be supplied by implication. This presumption of validity is logically rebutted only where the record suggests the trial court was aware of the omission and its alleged significance, yet *deliberately* omitted the element from its written findings. A conscious, deliberate omission is not always shown, however, by a court's failure to make "requested" findings of fact.

■ After judgment is rendered in a bench trial, either party may request findings of fact and conclusions of law. *See* Tex.R. Civ. P. 296. However, because findings of fact can provide a basis for overcoming the presumption of validity and demonstrating error on appeal, they are normally requested by the losing party.[4] When this occurs, the trial court, as a matter of practice, usually invites the prevailing party to prepare proposed findings and conclusions based upon its rulings. *See Grossnickle v. Grossnickle*, 935 S.W.2d 830, 837 n. 1 (Tex.App.-Texarkana 1996, writ denied). Thus, while the appellant will often make a general request for findings of fact and conclusions of law under Rule 296, the request is global in nature; it is the appellee who drafts a detailed proposal "requesting" a finding on specific elements necessary to support the court's judgment. We hold it is primarily in this sense that Rule 299 makes reference to "omitted *unrequested* elements."

■ If the appellee drafts proposed findings of fact and conclusions of law that set forth every element of his ground of recovery or defense, and the trial court deletes one of the elements, the omitted element cannot later be supplied on appeal by implication. It is apparent from the record that the omission was deliberate; the element was "requested" and refused.

■ In a jury trial, a similar phenomena can occur when the court's charge is prepared. At the close of a jury trial, the parties will normally propose factual issues in the form of questions to be answered by the jury that will establish the respective grounds for recovery or defenses upon which they each rely. *See* Tex.R. Civ. P. 273. If a party totally fails to request a particular ground for recovery or defense, it is waived. *See* Tex.R. Civ. P. 279. However, if a party submits a ground for recovery or defense, but the

4. *See* Richard Orsinger, *Findings of Fact and Conclusions of Law, in* 6 Texas Civil Practice § 18:3 (1992 ed.).

question inadvertently omits one or more elements of the ground or defense, the presumption of validity operates to preserve the judgment by deeming the elements to have been found by the trial court. *Id.*

To prevent elements of an opponent's ground of recovery or defense from being presumed on appeal, a party may object to the omission. *Id.* However, before an objection to a missing element will prevent it from being deemed on appeal, the objection must point out distinctively the objectionable matter and the grounds for objection. *See* Tex.R. Civ. P. 274. Thus, if the objection is obscured or concealed by voluminous unfounded objections, minute differentiations or numerous unnecessary requests, the omitted element will be deemed to have been found by the trial court notwithstanding the opponent's objection to its omission from the jury charge. *Id.*

Likewise, in a bench trial, the appellant may request additional findings on omitted elements to prevent them from being deemed on appeal. *See* Tex.R. Civ. P. 298. However, before the failure to grant additional findings will impede an appellate court from presuming implied findings, the omission must be made manifest to the trial court. While Rule 298, unlike Rule 274, does not expressly require the party to distinctly point out the omission, we believe it is logically required. If the trial court is not specifically made aware of the missing element, the omission is presumed to be inadvertent.

A request for negative findings will rarely apprise the trial court that it has omitted an essential element in its original findings. For example, if the losing party is simply dissatisfied with the court's resolution of disputed fact issues, he may request "additional" or "amended" findings that are contrary to those originally made by the trial court. The trial court, however, as the trier-of-fact has no duty make additional or amended findings

that are unnecessary or contrary to its judgment; a trial court is only required to make additional findings and conclusions that are appropriate. *See* Tex.R. Civ. P. 298; *ASAI v. Vanco Insulation Abatement, Inc.*, 932 S.W.2d 118, 122 (Tex.App.-El Paso 1996, no writ). Moreover, the trial court is not required to make additional findings which conflict with the original findings. *See Hunter v. NCNB Tex. Nat'l Bank*, 857 S.W.2d 722, 727 (Tex. App.-Houston [14th Dist.] 1993, writ denied).

Here, the trial court adopted 35 of Helen's 36 proposed findings of fact. Vickery then submitted a request for 44 additional or amended findings. Some were slight variations of undisputed facts already found by the trial court; others were absolute contradictions of the original findings. However, nothing in Vickery's request for additional findings alerted the trial court that it had omitted two essential elements in its original findings.

Appellate courts will not normally consider any error which could have been brought to the court's attention during trial. *See Jones v. Martin K. Eby Const. Co., Inc.*, 841 S.W.2d 426, 428 (Tex. App.-Dallas 1992, writ denied). While an appellant need not make a request for additional findings and conclusions, such a request should sharpen, not obfuscate, the issues for appeal. Here, Vickery did not make clear the issue he now advances on appeal, i.e., that the judgment is not supported by the court's findings. Rather, Vickery submitted his requests for findings on the two omitted elements negatively, in the manner least likely to be approved by the trial court. Additionally, the two elements were then "buried" in a voluminous request for other findings that were largely immaterial and frequently repugnant to the judgment. As a whole, the requested findings appear to be a protest against the trial court's resolution of disputed fact issues—a matter that is solely within the discretion of the trial court and cannot be successfully raised as a ground

of error on appeal.[5] In short, Vickery did nothing to alert the trial court to the significance of his requests; on the contrary, it appears Vickery sought to protect himself from subsequent implied findings without alerting the trial judge to any need thereof.

■ The primary purpose for findings of fact is to assist the losing party in narrowing his issues on appeal by ascertaining the true basis for the trial court's decision.[6] Appellant's interpretation of Rule 299, however, would stand the rule on its head. Rather than ascertaining the true basis for the trial court's holding, appellant would seek to convert the rule into a method for ambushing the trial judge. Were we to permit such a manipulation of the rule, the losing party could inundate the trial judge with requested findings, all of which were immaterial, contrary to the judgment, or slight variations of the original findings without ever disclosing that one such requested finding pertains to an omitted element. This tactic would not enhance the trial court's truth-finding function nor assist the appellate court in any meaningful review of the trial court's decision.

This is not to say the losing party may not submit a request for negative findings or findings contrary to the court's judgment.[7] For example, a hypothetical plaintiff might establish every element of his ground for recovery at trial and deny, but never refute, the defendant's affirmative defense. If the trial court should find for the plaintiff, the defendant must request findings on his affirmative defense or waive it on appeal. Such a request, of course, would be contrary to the court's judgment, but would also be absolutely essential to a proper resolution of the defendant's appeal.

■ Nevertheless, because a trial court should not make findings on every controverted fact, the court should make additional findings of fact only if they have some legal significance to an ultimate issue in the case.[8] Moreover, a request for addi-

**5.** As the fact-finder, the trial court is the sole judge of a witness' credibility and the weight of his testimony. *See Tate v. Commodore County Mut. Ins. Co.,* 767 S.W.2d 219, 224 (Tex.App.-Dallas 1989, writ denied). The trial court has the right to accept or reject any part or all of a witness' testimony. *See Hood v. Texas Indem. Ins. Co.,* 146 Tex. 522, 209 S.W.2d 345, 346 (1948). It may believe one witness and disbelieve others. *See McGalliard v. Kuhlmann,* 722 S.W.2d 694, 697 (Tex. 1986). It may resolve inconsistencies in any witness' testimony. *Id.*

The reviewing court, on the other hand, is not a fact-finder and cannot pass upon a witness' credibility or substitute its judgment for that of the fact-finder even if there is conflicting evidence that would support a different conclusion. *See Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986). Thus, there is no appellate review from a trial court's decision to find one fact as opposed to another so long as there is some evidence in the record which, if believed, would support the trial court's finding.

**6.** Richard Orsinger writes:

When findings and conclusions appear in the record, the appellate court can evaluate the correctness of the trial court's judgment in light of the facts and legal principles actually relied on by the trial judge. Thus, an appeal based on findings of fact and conclusions of law can test the real reasons for the trial court's judgment, as opposed to the presumed reasons for the judgment. In a case involving multiple claims or defenses, the appellant should request findings of fact and conclusions of law in hopes that the trial court will, through its findings and conclusions, narrow the bases of the judgment to only a portion of those claims and defenses, thereby reducing the number of contentions that the appellant must raise on appeal.

Richard Orsinger, *Findings of Fact and Conclusions of Law, in* 6 Texas Civil Practice § 18:3 (1992 ed.).

**7.** *See Boy Scouts v. Responsive Terminal Sys.,* 790 S.W.2d 738, 743 (Tex.App.-Dallas 1990, writ denied).

**8.** "It is not proper or necessary for the trial court to make specific findings on every controverted fact, unless the same goes to the controlling issues as raised, and unless the findings as made fail to include sufficient findings upon which to adjudicate the rights of the parties." *Jinks v. Jinks,* 205 S.W.2d

tional findings is in the nature of an objection; thus, when making a request for additional findings, the request must be "for *specified* additional or amended findings and conclusions." Tex.R. Civ. P. 298 (emphasis added). When an appellant makes a request for a negative finding, as Vickery did here, the court's failure to make such a finding is *consistent* with its judgment. In other words, the presumption of validity is not logically rebutted by the court's failure to make findings *contrary* to its judgment.

 Accordingly, we hold that a request for *negative* findings *contrary* to a court's judgment has no logical or legal significance toward rebutting the presumption of validity unless the trial court is specifically alerted to the real issue, i.e., one or more necessary elements have been omitted in the court's original findings.[9] We find Vickery did not meet the requirements of Rule 298 because he failed to apprise the trial court of the specific omissions he now complains of on appeal.

### No Presumption Associated with the Failure to Make Additional Findings

Rule 298 provides that "[n]o findings or conclusions shall be deemed or presumed by any failure of the court to make any additional findings or conclusions." Vickery cites this provision of the rule to support his assertion that we cannot presume the existence of implied findings. However, because Vickery requested negative findings of fact contrary to the judgment, he failed to properly "specify" his real request which was for findings on two omitted elements. In other words, because Vickery's request does not comply with Rule 298, the rule has no applicability here. Moreover, the portion of Rule 298 cited by Vickery was added in 1990 to protect those who do properly alert the trial court to the need for additional findings.

 When a party requests additional findings and conclusions, the trial court is obliged to make the additional findings and conclusions if appropriate. *See* Tex.R. Civ. P. 298. Failure to make additional findings and conclusions may constitute reversible error if the appellant is prevented from adequately presenting the matter being complained of on appeal. *See Tamez v. Tamez*, 822 S.W.2d 688, 692–93 (Tex.App.-Corpus Christi 1991, writ denied). Thus when an appellant properly requests additional findings of fact, the

---

816, 817 (Tex.Civ.App.-Texarkana 1947, no writ) (quoting *Grant v. Pendley*, 88 S.W.2d 132, 135 (Tex.Civ.App.-Galveston 1935, writ dism'd)); *see also ASAI v. Vanco Insulation Abatement, Inc.*, 932 S.W.2d 118, 122 (Tex. App.—El Paso 1996, no writ).

9. Where an appellant complains on appeal that the trial court refused to make additional findings, but fails to apprise the appellate court of the significance of such findings and how they relate to some ultimate issue on appeal, the point of error is waived. *See Grossnickle*, 935 S.W.2d at 839. If the appellant has a duty to explain the significance of his requested findings to an appellate court, he has no less duty to explain their significance to the trial court.

Vickery cites *Boy Scouts* to support his contention that a request for negative findings constitutes a "request" for findings under Rule 299. However, the opinion in *Boy Scouts* does not reflect whether the appellant

accompanied its request for negative findings with specific notice to the trial court that an essential element had been omitted from its original findings. To the extent *Boy Scouts* holds that a request for negative findings *alone* is sufficient to raise and preserve an issue regarding omitted elements, we disagree.

The cases cited by *Boy Scouts* regarding the legal impact of a request for negative findings, i.e., *Gunter v. Pogue*, 672 S.W.2d 840 (Tex.App.-Corpus Christi 1985, writ ref'd n.r.e.) and *Chapa v. Reilly*, 733 S.W.2d 236 (Tex.App.-Corpus Christi 1986, no writ), do not expressly state that the requests in those cases were requests for *negative* findings. Moreover, *Boy Scouts* has never been cited in any subsequent opinion for the proposition that a request for negative findings constitutes a "request" for findings on omitted elements. Because we find a request for negative findings, without more, does not alert the trial court to any deficiency in its original findings, we decline to follow *Boy Scouts*.

appellate court must consider whether such findings should have been made and whether the trial court's failure to make such findings has prejudiced the appellant.[10] However, prior to 1990, an appellate court could avoid considering such a point of error by simply presuming the trial court's failure to make additional findings meant it had resolved those factual issues against the appellant.

For example, in *Sauer v. Johnson,* 520 S.W.2d 438 (Tex.Civ.App.-Austin 1975, writ ref'd n.r.e.), the Sauers purchased a new home from Johnson. When the floor buckled one year after purchase, the Sauers sued Johnson for breach of an express written warranty. *Id.* at 440. The proof showed Johnson made no express warranty, and the trial court entered a take nothing judgment. *Id.* at 440-41. On appeal, the Sauers argued, and the court of appeals agreed, that two other grounds for recovery had been tried by consent, namely, breach of an implied warranty and negligence. The Sauers asked for additional findings on these two grounds for recovery, but the trial court declined the request. *Id.* at 441. Although the trial court may well have concluded the requested findings were not pertinent to the court's judgment since these grounds had not been included in the Sauers' written pleadings, the court of appeals did not address the issue on its merits; rather, the court simply interpreted the trial court's failure to make additional findings as "tantamount to findings against appellant's contentions." *Id.*

Likewise, in *Thompson v. Lee Roy Crawford Produce Co.,* 149 Tex. 357, 233 S.W.2d 295 (1950), Crawford shipped a carload of tomatoes from San Benito, Texas, to Pittsburgh, Pennsylvania, via Thompson's railroad. The tomatoes were in transit for 19 days. When the shipment arrived, many of the tomatoes had spoiled and Crawford sued Thompson for damages. *Id.* at 295-96. The evidence showed, however, that 8 days of delay were attributable to Crawford, who ordered the car be held for 2 days in Kansas City and 6 days in Chicago. Accordingly, the trial court found the spoilage was due almost entirely to delays induced by Crawford. *Id.* at 296.

On appeal, Crawford complained the trial court had ignored his request for additional findings that some of the damage was due to poor ventilation and Thompson's installation of a heater in the car. *Id.* Rather than address the issue of whether Crawford was harmed by the court's failure to make additional findings, the Supreme Court summarily concluded the trial court's failure to make the findings amounted to a finding against Crawford which it was not authorized to disturb. *Id.* at 297.

In one instance, an appellate court was even encouraged to use this "presumption" against the court's judgment. In *First Baptist/Amarillo Foundation v. Potter County Appraisal District,* 813 S.W.2d 192, 193 n. 1 (Tex.App.-Amarillo 1991, no writ), the appellant requested an additional conclusion of law, namely, that the standard of review employed by the district court was by trial *de novo. Id.* The court honored the request, but did so untimely. Because it was untimely, the appellant argued the conclusion was a nullity. Having "refused" his request for the additional conclusion, appellant argued the trial court must be presumed to have used a standard other than trial *de novo. Id.*

▮ The aforementioned abuses have been rectified by the amendment of Rule

---

10. There is no error when the requested additional findings were disposed of directly or indirectly by the original findings, and the failure to make additional findings was not prejudicial to the appellant. *See Levine v. Maverick County Water Control & Improvement Dist. No. 1,* 884 S.W.2d 790, 796 (Tex.App.-San Antonio 1994, writ denied). The failure to make additional findings is not prejudicial to the appellant if the refusal does not prevent an adequate presentation on appeal. *See International Ins. Agency, Inc. v. Railroad Comm'n,* 893 S.W.2d 204, 210 (Tex.App.-Austin 1995, writ denied).

298. If an appellant challenges a trial court's failure to make additional findings, the reviewing court must now address the issue on its merits; it cannot simply conclude from the court's failure to make additional findings that it resolved the factual disputes contrary to appellant's position. In other words, Rule 298 creates no presumption. An appellant may request findings that are contrary to the judgment under Rule 298 without fear that the court's failure to make such findings will itself be interpreted as a finding against the appellant.

### *Presumption of Implied Findings*

 While we are prohibited under Rule 298 from presuming the trial court impliedly found the omitted elements because it refused Vickery's request for negative findings, we are not precluded under Rule 299 from presuming the trial court impliedly found the omitted elements if they were never "requested."

Because Vickery submitted a request that the trial court expressly *not* find two essential elements of the Rule 4.02(a) violation, he is precluded from now asserting on appeal that he "requested" the trial court to find the omitted elements. The trial court's failure to make the negative findings requested by Vickery is consistent with its judgment and does not logically rebut the presumption of validity. Moreover, absent a specific clarification of the issue, a request for negative findings contrary to the court's judgment does not logically suggest to the court that elements have been omitted or that findings are being requested thereon. Thus, we hold Vickery did not "request" additional findings on the omitted elements. Accordingly, we are authorized by Rule 299 to presume the trial court impliedly made any findings, supported by the record, that are necessary to support its judgment.

### *Sufficiency of the Evidence*

 An appellant may challenge implied findings by contesting the legal and factual sufficiency of the evidence to support them. *See Worford,* 801 S.W.2d at 109 (Tex.1990). When such points are raised, the standard of review to be applied is the same as that to be applied in the review of jury findings or a trial court's findings of fact. *See ForScan Corp. v. Dresser Indus. Inc.,* 789 S.W.2d 389, 394 (Tex. App–Houston [14 th Dist.] 1990, writ denied). In reviewing the legal sufficiency of evidence to support a specific finding of fact, we consider all the evidence in the light most favorable to the finding and disregard all contrary evidence and inferences. *See Catalina v. Blasdel,* 881 S.W.2d 295 (Tex.1994). We will uphold the finding if there is more than a scintilla of evidence to support it. *See Leitch v. Hornsby,* 935 S.W.2d 114, 118 (Tex.1996). If we determine the evidence is legally sufficient, we must then determine whether it is factually sufficient. In doing so, we no longer consider the evidence in the light most favorable to the finding; rather, we consider and weigh all the evidence and set aside the finding only if it is so contrary to the great weight and preponderance of the evidence as to be clearly wrong and unjust. *See Ortiz v. Jones,* 917 S.W.2d 770, 772 (Tex.1996); *Cohn v. Commission for Lawyer Discipline,* 979 S.W.2d 694, 696 (Tex.App.-Houston [14 th Dist.] 1998, no pet. h.). In so doing, we do not pass on the witnesses' credibility or substitute our judgment for that of the trier of fact. *See Cohn,* 979 S.W.2d at 696.

 The record reflects Hoagland was a licensed attorney who handled cases with Vickery. Vickery called Hoagland while the bill of review was pending and asked Hoagland to contact Helen to see if they could reach some common ground. Vickery told Hoagland he did not want to go through his own attorney or Helen's attorneys because he did not have confidence they could resolve the dispute. Vickery mentioned to Hoagland that he was willing to make a substantial offer, indicated what he thought was reasonable, and faxed him a document listing matters upon which

Vickery and Helen had previously agreed. Hoagland conveyed to Helen that Vickery was willing to offer her furniture, the annuity, gold, and cash. This is some evidence to support a presumed finding that Hoagland acted as Vickery's attorney and therefore was representing Vickery when he contacted Helen.[11]

■ In addition, there is some evidence Vickery acted as his own attorney. Vickery was a licensed attorney. Although he was represented by Burta Raborn in the litigation surrounding the bill of review, he told Hoagland he did not believe she would be able to resolve the matter. In fact, he told Hoagland he did not want to use his attorney. This is some evidence Vickery repudiated the attorney-client relationship with Raborn and acted on his own to negotiate a settlement.

Vickery argues, as a matter of law, that he could not have acted as his own attorney because Burta Raborn was his attorney of record. To support his contention, Vickery cites us to a Connecticut case where an attorney, who was represented by counsel, was being evicted. *See Pinsky v. Statewide Grievance Comm.*, 216 Conn. 228, 578 A.2d 1075 (1990). When the attorney sent a letter to one of the plaintiff's employees, threatening him with legal action, the state grievance committee accused him of violating the disciplinary rules by making an improper contact. As is the case here, the attorney argued he was not representing a client at the time he sent the letter and, thus, had not violated the disciplinary rules. *See id.* at 1077.

The Connecticut Supreme Court noted that contact between litigants is authorized. Without further explanation, the court concluded the attorney was not representing a client when he sent the letter. *Id.* at 1079. Thus, the attorney did not make an unauthorized contact. *Id.*

Other courts, however, have held that where an attorney is representing himself, he is necessarily representing a client and can be charged with unauthorized contact. *See Runsvold v. Idaho State Bar*, 129 Idaho 419, 925 P.2d 1118, 1120 (1996); *In re Segall*, 117 Ill.2d 1, 109 Ill.Dec. 149, 509 N.E.2d 988, 990 (1987); *Sandstrom v. Sandstrom*, 880 P.2d 103, 108 (Wyo.1994). Further, at least one Texas court has rejected Vickery's argument in another context. *See e.g., Weiss v. Commission for Lawyer Discipline*, 981 S.W.2d 8, 20 (Tex. App.-San Antonio 1998, pet. denied) (holding that an attorney who made a false statement to a tribunal before whom he was appearing as a party violated the Texas Disciplinary Rules of Professional Conduct).

We do not find *Pinsky* to be persuasive. Under *Pinsky*, so long as an attorney is represented by counsel, he is not representing a client and can contact an opposing party regarding the subject matter of pending litigation without fear of violating Rule 4.02(a). Thus, he may do that which he would otherwise be unable to do if he represented himself, by simply employing a counsel of record. This position is untenable in a situation where, as here, the attorney expressly repudiated his counsel's representation just prior to the communication, but later, on appeal, claims the attorney-client representation shields him from liability for making the improper communication.

■ Further, the *Pinsky* rationale is contrary to the purpose of the rule. The purpose of Rule 4.02(a) is "to preserve the integrity of the client-lawyer relationship by protecting the represented party from the superior knowledge and skill of the opposing lawyer." *In re News Am. Publ'g, Inc.*, 974 S.W.2d 97, 100 (Tex.App.-San Antonio 1998, no pet.) (quoting Robert P. Schuwerk and John F. Sutton, Jr., *A*

11. Because there is some evidence Hoagland violated Rule 4.02(a), and furthermore, there is evidence Vickery induced Hoagland to do so, Vickery also violated Rule 4.02(a). *See*

TEX. DISCIPLINARY R. PROF'L CONDUCT 8.04(a)(1) (forbidding an attorney from inducing another to violate the disciplinary rules).

*Guide to the Texas Disciplinary Rules of Professional Conduct,* 27A HOUSTON L. REV. 1, 351 (1990) (addressing former rule)). In fact, a layman will routinely employ counsel to avoid direct dealings with opposing counsel and to protect him from the greater experience and specialized knowledge of his adversary.

Finally, we believe *Pinsky* is distinguishable on its facts. In *Pinsky,* the court did not mention whether the attorney expressly repudiated his attorney's representation. Here, Vickery emphatically told Hoagland he did not want to utilize his attorney.

■ An attorney may undoubtedly act as a private citizen in a variety of situations. Nonetheless, as a private citizen, he must "maintain the highest standards of ethical conduct" and "conform to the requirements of the law." *See* TEX. DISCIPLINARY R. PROF'L CONDUCT, preamble, §§ 1, 4. Vickery's attorney of record, Ms. Raborn, could not have communicated directly with Helen without violating Rule 4.02(a). Moreover, Vickery could not induce Ms. Raborn to contact Helen directly without violating Rule 8.04(a)(1). We do not believe Vickery can escape liability under the disciplinary rules by simply inducing an attorney other than his attorney of record to contact Helen directly. Such an interpretation would violate both the integrity of the legal system and the spirit of the disciplinary rules. Consequently, we hold that an attorney's designation of counsel of record does not, as a matter of law, preclude the application of Rule 4.02(a) to his actions in contacting an opposing party.

With regard to factual sufficiency, the record shows Hoagland testified that in contacting Helen, he acted as a friend to both and not as an attorney to either. In fact, Hoagland suggested to Helen that she ask for a greater amount than Vickery was offering. Hoagland also said he intended to contact both Vickery's and Helen's attorneys if Helen expressed an interest in resolving the matter. Further,

Hoagland said he did not think Vickery had clothed him with authority to resolve the matter. Finally, Vickery testified that he did not ask Hoagland to act as his attorney and that Hoagland was not representing his interests. Despite this evidence, the presumed finding that Hoagland acted as Vickery's attorney is not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. The same is true for the presumed finding that Vickery acted as his own attorney.

■ Next, Vickery contends the evidence shows Helen's attorneys impliedly consented to the communication. When Helen told her attorneys about the communication from Hoagland, they advised her to tape record subsequent conversations. Vickery's contention is untenable because Helen's attorneys did not advise her to tape record the conversations until after Hoagland had already made an improper communication. Moreover, the advice to tape record future conversations does not demonstrate implied consent, but an attempt to document improper communications. Thus, we find the evidence is legally and factually sufficient to sustain the implied finding that Helen's attorneys disapproved of the communication.

After reviewing the record we find the trial court's judgment regarding Vickery's violation of Rule 4.02(a) is supported by legally sufficient evidence and is not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. Accordingly, we overrule points of error one and five.

### THREATENING CRIMINAL CHARGES TO GAIN AN ADVANTAGE IN A CIVIL MATTER

■ In points of error two and six, Vickery argues the findings of fact and evidence do not support a judgment based on a violation of Rule 4.04(b) of the Rules of Disciplinary Procedure; the rule provides, in pertinent part:

A lawyer shall not present, participate in presenting, or threaten to present criminal or disciplinary charges solely to gain an advantage in a civil matter.

TEX. DISCIPLINARY R. PROF'L CONDUCT 4.04(b).

In its written findings, the trial court found: (1) Vickery is an attorney; (2) Hoagland threatened Helen with criminal charges; (3) Vickery participated in the presentation; and (4) the threat was made to gain advantage in a civil matter. Because it is undisputed that Hoagland alone made the threat, Vickery contends the findings are insufficient without a finding that Hoagland acted as Vickery's agent.

Because the court found at least one essential element of a Rule 4.04(b) violation, we may presume it found every other necessary element that is supported by the evidence. *See* TEX.R. CIV. P. 299. As we noted in our discussion of points of error one and five, Vickery admitted asking Hoagland to talk to Helen, faxing Hoagland a copy of a previous agreement, and telling Hoagland what he would be willing to offer her. Hoagland then met with Helen, conveyed the information, and suggested that Vickery might file criminal charges against her if she did not accept his settlement offer. This is some evidence that Hoagland acted as Vickery's agent; the implied finding is not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust.

Vickery also disputes the adequacy of the court's findings of fact because the trial judge changed the proposed wording from "Hoagland threatened that Vickery *would* file criminal charges" to "Hoagland threatened that Vickery *might* file criminal charges." (Emphasis added). Vickery contends the mere possibility that criminal charges might be filed is not a threat. We find this argument to be utterly spurious. Even if the finding of fact could be construed to suggest something less than a threat, we will not reverse a judgment because of erroneous findings if the judgment is otherwise correct on the

merits. *See Able v. Able*, 725 S.W.2d 778, 780 (Tex.App.—Houston [14 th Dist.] 1987, writ ref'd n.r.e.). Here, there is ample evidence supporting the judgment. Vickery told Hoagland he suspected Helen of breaking into his Baytown town home; he was interested in resolving their dispute; and he did not want to pursue criminal charges against her. However, Vickery added that if he could not obtain a settlement, he would relay his suspicions regarding the burglary to the police. Hoagland told Helen that if the pending litigation could be resolved, Vickery would not report the theft of papers from his town home.

In his tape recorded conversation with Helen, Hoagland said:

> [Vickery] will go to the Baytown police and he'll say all these documents were stolen from his place and now they've shown up in the lawsuit and those were the same ones that were taken from his apartment ... and file out a complaint and you know maybe he knows somebody in the sheriff's department or in the Baytown police department that he can get to present [it] to a grand jury. . . .

Hoagland ominously added that Vickery wanted to make her life miserable and that he was considering filing some "contempt thing" against her. Hoagland told Helen that Vickery was offering her $400,000; if she didn't take it, he would get her indicted.

Hoagland, on the other hand, testified that at the time the communication was made, Vickery had already filed a complaint; Helen knew he had already filed a complaint; and, thus, the communication could not have been a "threat." Hoagland also denied that Vickery ever told him that he knew someone who could get the complaint presented to the grand jury. Vickery also testified in a conclusory fashion and stated that he did not violate Rule 4.04(b). Despite the conflicting testimony, the evidence is legally and factually evi-

dence to support the trial court's judgment regarding Vickery's violation of Rule 4.04(b). Accordingly, the second and sixth points of error are overruled.

### INDUCING RICHARDS TO VIOLATE THE DISCIPLINARY RULES

In his third and seventh points of error, Vickery argues the findings of fact and evidence do not support the trial court's conclusion that Vickery violated disciplinary rule 8.04(a)(1). The rule provides:

> A lawyer shall not violate these rules, knowingly assist or induce another to do so, or do so through the acts of another, whether or not such violation occurred in the course of a client-lawyer relationship.

TEX. DISCIPLINARY R. PROF'L CONDUCT 8.04(a)(1).

The trial court found Vickery arranged for his friend and colleague, Dianne Richards, to represent Helen in the divorce. The court further found that during the entire divorce, Richards and Vickery acted in concert against the interests of Helen. Because Rule 1.06(a) of the Rules of Disciplinary Procedure states that a lawyer shall not represent opposing parties to the same litigation, the trial court concluded that Vickery induced Richards to violate the Rules of Disciplinary Procedure.

Vickery contends he and Helen had "an agreed divorce with no actual contest." Vickery further claims Richards had a good faith belief she was not representing opposing parties. Thus, Richards did not violate, nor did he induce her to violate, Rule 1.06(a).

Vickery's contention is incorrect. The Family Code allows for agreed divorces when the parties enter into a written agreement concerning the division of property and the liabilities of the spouses. *See* TEX. FAM.CODE ANN. § 7.006(a), (b) (Vernon 1998). A property division may be set aside, however, where the agreement is induced by fraud. *See, e.g., Mar-*

*tin v. Martin,* 840 S.W.2d 586, 592 (Tex. App.-Tyler 1992, writ denied). Therefore, contrary to Vickery's assertion, when a property division has been induced by fraud, the divorce cannot be agreed. Furthermore, Vickery contested the divorce by filing a counter-petition, taking it outside of § 7.006. Accordingly, his argument is entirely without merit.

We also reject Vickery's argument he did not violate the disciplinary rules because Richards acted in good faith. Although Helen paid Richards to represent her in the divorce, Richards followed Vickery's instructions in preparing the petition. Richards also drafted and signed Vickery's cross-petition at his direction. It is undisputed that Richards never saw or met with Helen during the course of representing her until Helen signed the final order of divorce.

However, even if we assume Richards acted in good faith, this fact does not absolve Vickery of culpability. The record reflects Vickery induced Richards to represent him and his wife in the divorce. Although he told Helen the divorce was solely to protect assets, his subsequent actions reveal that his real intention was to marry one of her friends while depriving her of her of a significant portion of her community property. Had Helen known Vickery's true purpose, she would not have agreed to the property division. Moreover, Helen subsequently repudiated the "agreed divorce" by filing the bill of review. Whether or not Richards was aware she was representing opposing parties, Vickery knew she was representing opposing parties, and he induced her to do so. The only evidence to the contrary is Vickery's testimony that Helen knew he wanted a divorce for reasons other than asset protection and that she was fully apprised of the value of the estate. Consequently, we find there is legally and factually sufficient evidence to support the court's judgment.

CONDUCT INVOLVING DISHONESTY, FRAUD, DECEIT, OR MISREPRESENTATION

 In his fourth and eighth points of error, Vickery contends the findings and evidence do not establish a violation of disciplinary rule 8.04(a)(3). The rule provides: "A lawyer shall not engage in conduct involving dishonesty, fraud, deceit or misrepresentation." TEX. DISCIPLINARY R. PROF'L CONDUCT 8.04(a)(3). The Commission asserted that Vickery misrepresented Helen's county of residency, the length of their separation prior to filing for divorce, the reason he desired the divorce, and the value of their marital assets. We consider each allegation in turn.

Vickery rejects the court's finding that he misrepresented Helen's county of residence. This representation was in Vickery's answer and cross-petition, which stated that, "Cross–Petitioner and Cross–Respondent are domiciliaries of this state for the preceding six-month period and HELEN ROBERTA VICKERY, Cross–Respondent, has been a resident of this county for the preceding ninety (90) day period." He contends there is a difference between a domicile and a residence, and that Helen had several residences; therefore, he made no misrepresentation in his answer and counter-petition.

 Section 6.301 of the Family Code provides that "[a] suit for divorce may not be maintained ... unless at the time suit is filed either the petitioner or respondent has been: (1) a domiciliary of this state for the preceding six-month period; and (2) and a resident of the county in which the suit is filed for the preceding 90–day period." TEX. FAM.CODE ANN. § 6.301 (Vernon 1998).[12] In a suit for divorce, residency requires "actual, physical, continuous living in the county of suit by one of the parties for the time specified [by Section 3.21 of the Family Code], coupled with a good-faith intent to make that county home." *See Cook v. Mayfield*, 886 S.W.2d

840, 842 (Tex.App.-Waco 1994, no writ) (quoting *Beavers v. Beavers*, 543 S.W.2d 720, 721 (Tex.Civ.App.-Waco 1976, no writ)).

Evidence was elicited that Helen did not actually, physically, and continuously live in Harris county for 90 days prior to Vickery's filing of his answer and counter-petition. For example, Helen testified she did not live in Houston, she never lived anywhere besides the Moss Hill ranch, and she never intended for Houston to be her permanent home, although she occasionally lived there on weekends. As of the date of the divorce, she was still living on the Moss Hill ranch, and she remained there until April following the divorce, when Vickery had her evicted. Vickery told her to change her driver's license and voter registration to Houston so they could file for divorce in Harris County and keep the divorce a secret in the county in which they lived, and she did so, although she claims she did not understand when she signed the voter registration that she was representing that she lived in Houston. Vickery also told Helen to build a house in Houston so it could be considered a homestead to protect their assets. Vickery gave Richards the information regarding Helen's residency, and Helen subsequently testified the allegation in his answer and counter-petition stating that she was a Harris County resident was untrue.

Vickery provided contrary evidence. He testified that Helen never wanted to leave Houston. He said Helen agreed she and Jessica would move back to Houston, and Jessica would go to private school. He testified it was Helen who wanted the Harris County divorce. As proof of these assertions, Vickery offered evidence of Jessica's Houston activities the same summer Helen filed for divorce. Finally, Vickery testified he did not misrepresent to the judge that Helen lived in Harris County.

Next, Vickery contests the trial court's finding and the sufficiency of the evidence

12. This suit is governed by the former Family Code, which was not substantively revised as

to general residency. *See* TEX. FAM.CODE ANN. § 3.21 (Vernon Pamph.1996).

that he misrepresented to the court that he and Helen were separated on or about June of 1991. This representation was also in his answer and cross-petition. Helen testified they did not separate until the end of October 1991, when Vickery moved out. Thereafter, Vickery still returned to spend some evenings with his family.

Vickery admitted in his pre-trial deposition that he and Helen did not separate until August 1991. Curiously, however, Vickery testified at trial that he and Helen were separated ninety days prior to the filing of his cross-petition and that they were separated as man and wife approximately two years prior to the filing of the cross-petition.

■ The next issue concerns Vickery's misrepresentation as to his purpose in obtaining the divorce. He contends that because the court changed the wording of the finding from "Helen ... learned that ... Vickery's intent in obtaining the divorce *was not* to shelter the marital property," to "Helen ... learned that ... Vickery's intent in obtaining the divorce *may not have been* to shelter the marital property," his intent is nullified by the amendment. We agree. However, the failure of proof as to one of the alleged incidents of dishonesty, fraud, deceit, or misrepresentation does not warrant a reversal of the judgment so long as there is sufficient evidence to support at least one such incident.

■ The final incident concerns Vickery's misrepresentations to the court regarding the total value of his assets and that the division of property was just and equitable. Vickery argues there is no evidence that Vickery ever represented the "total" value of the estate or that the settlement was fair and equitable. The Commission responds that Vickery necessarily made these representations to the court when he presented the court with a written agreement concerning the division of property.

■ In a divorce, "[i]t is the responsibility of the parties to the suit to produce evidence of the value of various properties in order to provide the trial judge with a basis upon which to make the division." *Wallace v. Wallace*, 623 S.W.2d 723, 725 (Tex.App.-Houston [1st Dist.] 1981, writ ref. n.r.e.). Here, the value of the assets was delineated by Vickery. While Helen agreed to the written declaration of their property, she had limited knowledge regarding their assets and was not concerned about the binding nature of the agreement because Vickery had represented to her that they would reunite after the conclusion of the malpractice suit. Vickery attended the court hearing regarding the property settlement, told the court he and Helen had a settlement agreement, and proved up the divorce. Significant property was omitted from the agreement: the annuity, a house, gold, treasury bills, antiques, collections, real estate, and a tax credit. Having told the court he and Helen had a property division, knowing it represented only a portion of their assets, and knowing Helen did not understand the import of the proceedings or the extent of their assets, Vickery misrepresented to the court that he and Helen had a just and right property division.

Some contrary evidence was presented by Vickery that the property division was intentionally vague to prevent others from learning the full extent of their assets. He testified he had no intention of defrauding Helen.

We find the evidence is both legally and factually sufficient to show Vickery misrepresented the location of Helen's residence, the date of their separation, and that the property division was just and equitable. The trial court did not err in finding Vickery violated rule 8.04(3). Accordingly, we overrule points of error four and eight.

### THE TRIAL AMENDMENT

■ In point of error ten, Vickery argues the trial court erred in allowing a trial amendment after the close of the

evidence. The original disciplinary petition alleged that Vickery violated Rule 8.04(a)(3) by misrepresenting Helen's residency, the length of time they had been separated, and the basis for obtaining a divorce. It also expressly stated that Vickery misrepresented the extent of the value of the marital assets but did not include this as a separate violation under this Rule 8.04. The trial amendment made the misrepresentation of his assets a separate basis for violating the rule.

 The court entered an order granting leave to file the trial amendment and observed the amendment would not cause surprise or prejudice. A court must grant a trial amendment unless (1) the opposing party presents evidence of surprise or prejudice, or (2) the amendment asserts a new cause of action or defense, rendering it prejudicial on its face, and the opposing party objects to the amendment. *See* TEX.R. CIV. P. 66; *Whole Foods Market Southwest v. Tijerina*, 979 S.W.2d 768, 776–77 (Tex.App.-Houston [14th Dist.] 1998, pet. denied). An amendment is not mandatory if it would change the nature of the trial. *See Whole Foods*, 979 S.W.2d at 777.

 Here, Vickery cannot claim surprise because the allegation that he misrepresented the value of the assets was set forth in the original petition; Vickery's amended answer specially excepted to this allegation; he testified at trial that he did not misrepresent the value of the assets; and there was substantial testimony regarding assets omitted from the property division. Vickery argues, however, that no showing of surprise is necessary if the amendment asserts a new cause of action or defense and is therefore prejudicial on its face. In *Whole Foods*, we enunciated three characteristics evidencing an amendment which is prejudicial on its face. First, the amendment must assert a new substantive matter that reshapes the nature of the trial itself. *Id.* at 777. A cause of action is not a new substantive matter if it has common elements with matters previously asserted and the evidentiary proof required to support it is the same for a cause of action that has already been pleaded. *Id.* Second, the new matter asserted must be of such a nature that the opposing party could not have anticipated it in light of the development of the case up to the time the amendment was requested. *Id.* Third, the opposing party's presentation of the case would be detrimentally affected by the filing of the amendment. *Id.*

Here, the new allegation is the basis for a violation of Rule 8.04(a)(3), which was previously pleaded with three other bases to support it. The elements to show a misrepresentation under Rule 8.04(a)(3) are the same whether the basis is a misrepresentation of residency, length of separation, the reason for the divorce, or the value of assets. In addition, Vickery could, and in fact did, anticipate this matter, given the original pleading, his answer, and the trial testimony germane to the allegation. As such, Vickery cannot meet his burden to show the trial amendment was prejudicial on its face.

Accordingly, point of error ten is overruled.

### ATTORNEY FEES

 The trial judge awarded $50,000 in attorney fees and expenses based on a rate of $200 per hour. The attorney for the Commission testified, however, that his actual rate, including expenses, was about $50 per hour. In points of error thirteen and fourteen, Vickery contends the attorney fees awarded by the court were excessive and not supported by the findings or conclusions.

 Attorney fees are an appropriate sanction for violating a disciplinary rule. *See* TEX.R. DISC. P. 1.06(R), (T). Here, the trial court made no finding of fact or conclusion of law regarding the attorney fees. Thus, we will affirm the award if it can be upheld on any legal theory supported by the evidence. *See*

*F.D.I.C. v. F & A Equip. Leasing,* 854 S.W.2d 681, 691 (Tex.App.-Dallas 1993, no writ).

■ Vickery argues the award was excessive because the Commission's trial counsel testified that his salary was $50 per hour, not $200. However, the usual and customary rate in the area is an appropriate measure for attorney fees. *See, e.g., Hanners v. State Bar,* 860 S.W.2d 903, 912 (Tex.App.-Dallas 1993, no writ). Vickery cites case law where courts have held the attorney fees awarded should not exceed fees actually agreed on between attorney and client; however, the cases he cites were not disciplinary proceedings. *See Thomas v. Thomas,* 603 S.W.2d 356 (Tex.Civ.App.-Houston [14th Dist.] 1980, writ dism'd); *Carson v. Carson,* 528 S.W.2d 308 (Tex.Civ.App.-Waco 1975, no writ); *Aetna Cas. & Surety Co. v. Taff,* 502 S.W.2d 903 (Tex.Civ.App.-Waco 1973, writ ref'd n.r.e.). Furthermore, the rules of disciplinary procedure define reasonable attorney fees as "a reasonable fee for a competent *private* attorney...." *See* Tex.R. Disc. P. 1.06(R). Vickery's contention is without merit.

We overrule Vickery's thirteenth and fourteenth points of error.

### WAIVED POINTS OF ERROR

Vickery's brief contains no argument in support of points of error 9, 12, and 15. He addresses point of error eleven to a limited extent, but offers no authority for his assertions. Thus, these points of error do not comply with Tex.R.App. P. 38.1(h). Accordingly, points of error 9, 11, 12, and 15 are waived, and the judgment of the trial court is affirmed.