Opinion issued August 16, 2007






 










In The

Court of Appeals

For The

First District of Texas






NO. 01-04-00104-CV






ROBERT S. "BOB" BENNETT, Appellant


V.


KELLY COGHLAN, Appellee






On Appeal from the County Court at Law No. 2

Harris County, Texas

Trial Court Cause No. 759,593






MEMORANDUM OPINION

This is an appeal from a judgment awarding attorney's fees in connection with
an application for turnover after judgment pursuant to Tex. Civ. Prac. & Rem. Code
Ann. § 31.002(e) (Vernon Supp. 2006). In five issues on appeal, appellant contends
that (1) the trial court erred in granting a partial summary judgment, (2) the evidence
is legally and factually insufficient to support the verdict, (3) the trial court erred in
awarding attorney's fees that were incurred after the underlying judgment was paid,
(4) the trial court erred in denying his motion for continuance, and (5) the trial court
erred in prohibiting adequate discovery. We affirm.

BACKGROUND

In 1996, appellant, Robert "Bob" Bennett and appellee, Kelly Coghlan, were
involved in an anti-trust lawsuit involving Mrs. Baird's bakery. (1)
 After the Mrs. Baird
litigation was settled, Coghlan sent Bennett a bill for $28,000, which Bennett refused to
pay. Coghlan then filed suit against Bennett in Gregg County, alleging fraud and
breach of contract. (2)

On January 29, 2001, the Gregg County litigation settled, and on August 13,2001, the trial court signed a final judgment awarding Coghlan $86,625 in damages, $20,000
in attorney's fees, and costs.

Unable to collect on the judgment, Coghlan filed an Application for Turnover after
Judgment in Harris County Civil Court at Law No. 2, pursuant to section 31.002 of the Texas
Civil Practices and Remedies Code. (3) It is the turnover litigation that gives rise to the present
appeal.

On January 28, 2003, collection of $ 100,019.20 was reached, thereby satisfying the
underlying judgment, but not the attorney's fees that Coghlan claimed he was owed
because of the necessity of filing the turnover litigation. See Tex. Civ. Prac. & Rem. Code
Ann. § 31.002(e) (Vernon Supp. 2006) ("The judgment creditor [in an application for
turnover] is entitled to recover reasonable costs, including attorney's fees."). Bennett
requested a jury trial on the issue of section 31.002(e) attorney's fees.

Thereafter, Coghlan filed a motion for partial summary judgment on the issue of a
reasonable hourly rate on which the attorney's fees should be calculated. The motion was
based on the doctrine of judicial estoppel. Specifically, Coghlan argued that, in the Mrs.
Baird litigation, Bennett had represented to the trial court that Coghlan's "historic hourly
billing rate" was $325 per hour, and that, based on that representation, Bennett should be
estopped from arguing in the turnover litigation that Coghlan's billing rate should be less.
Bennett responded, arguing that a reasonable rate for an anti-trust suit is different from the
reasonable rate for a collection suit. (4)
 The trial court granted Coghlan's motion for partial
summary judgment, ruling that Bennett was estopped from denying that $325 an hour was
a fair and reasonable hourly rate for Coghlan. (5)

Nevertheless, when the case went to trial, the jury was asked to answer
the following two questions: 1. What are the reasonable costs, including attorney's fees for
the services performed by the Plaintiff in this case, stated in dollars and
cents?

 

 2. (A) What is a reasonable hourly rate for attorney's fees for
Plaintiff in this cause?


 (B) How many hours were reasonably spent by Plaintiff in
this cause for preparation and trial of this cause? 


The jury charge did not instruct the jury that $325 was a reasonable hourly rate
for Coghlan. Instead, the jury was instructed to determine the reasonable value for
Coghlan's service based on a list of eight factors.

The jury returned a verdict in favor of Coghlan, awarding him $126,748.89
($122,850 in services and $3898.89 in costs) for legal services and costs through trial,
$26,125 in the event of an appeal to the court of appeals, $19,625 in the event of
making or responding to a petition for review in the Texas Supreme Court, and $6750
in the event that the Texas Supreme Court grants a petition for review. The jury also
determined that a reasonable hourly rate for Coghlan was $325 an hour and that he
worked 378 hours in preparing the case for trial. The number of hours worked
multiplied by the hourly rate exactly matches the amount that the jury awarded
Coghlan for the value of his services.

GRANT OF PARTIAL SUMMARY JUDGMENT

In issue one, Bennett contends the trial court erred in granting Coghlan's motion
for partial summary judgment on the issue of judicial estoppel. Bennett argues that the
reasonableness of attorneys fees is inherently a fact question. However, the Supreme
Court has recently held that "a trial court's erroneous decision to grant summary
judgment can be rendered harmless by subsequent events in the trial court."
Progressive County Mut. Ins. Co. v. Boyd, 177 S.W.3d 919, 921 (Tex. 2005).

In Progressive, the plaintiff brought both contractual and extra-contractual claims
arising from his insurer's denial of coverage after an auto accident. Id. at 920. The trial
court granted summary judgment on the plaintiff's extra-contractual claims and
submitted the contractual claims to a jury. Id. The jury found that the plaintiff had notbeen involved in an accident with an uninsured vehicle and rendered a take-nothing
judgment in favor of the insurer. Id. The Supreme Court concluded that "even if the
trial court erred by granting summary judgment as to the bad-faith and extra-contractual
claims, the error was harmless because the jury finding in the contract case negated
coverage . . . ." Id.

The principle underlying the Progressive decision--that subsequent events at trial
can render harmless an erroneous grant of partial summary judgment--is equally
applicable to the case before us. Assuming without deciding that the trial court's grant
of partial summary judgment on the issue of a reasonable billing rate for Coghlan was
error, such error was rendered harmless when the trial court submitted the same
question to the jury.

A trial court should not set aside a previously granted summary judgment and
submit the issue addressed by the summary judgment to a jury, without first affording
the parties the opportunity to litigate the issue. See Bi-Ed, Ltd. v. Ramsey, 935
S.W.2d 122, 123 (Tex. 1996) (per curiam); Elder Constr., Inc. v. City of Colleyville,
839 S.W.2d 91, 92 (Tex. 1992) (per curiam); Fabio v. Ertel, 2007 WL 79476 (Tex.
App.--Houston [1st Dist.] Jan. 11, 2007, no pet). However, in this case, the parties
were given the opportunity to fully litigate the issue of Coghlan's hourly rate. 
During trial questioning of Coghlan's expert, the following exchange took place:

 [Coghlan]: John, this figure is based on $325 an hour. Why
in your opinion am I worth that much, I guess would be the
best way to put it?

 

 [Witness]: Well, it's my understanding that there's
already--


 [Trial Court]: Well, first of all, do you have an opinion as
to whether or not that would be a reasonable amount for
Mr. -- for a lawyer of Mr. Coghlan's experience to be
charging for work such as this?

 [Witness]: Yes, I do.


 [Trial Court]: No, do you want to go to Summary
Judgment? I will briefly do so.


 [Witness]: It's my understanding that the Court has already
considered what a reasonable rate for Mr. Coghlan would
be and entered an order finding that $325 an hour was a
reasonable amount and in what's called a summary
judgment where -


 [Trial Court]: Let me instruct the jurors at this time. In a
summary judgment there is no fact in dispute -- material
facts in dispute as a matter of law. An issue can be decided
so the jury doesn't have to hear evidence. Now, you heard
evidence of it. I can make a ruling. There were some
judicial admissions that I found contained in some of the
documents that were before me whereby in a totally
separate court proceeding that amount was stated by Mr.
Bennett as a reasonable hourly rate. And, therefore, rather
than have to make a decision what an hourly rate was that
was the rate that I said is reasonable but law in this case. 
Okay. Mr. Bennett stated that about Mr. Coghlan but I
didn't make that clear to you guys.


 [Bennett]: Judge, we need to make an objection to that.


 [Trial Court]: Feel free to. As you know, when we -- make
just make a simple objection, but I am going to allow you
when, -- if you choose to take the stand yourself to
explain, okay, a little bit further detail. Okay.


 [Bennett]: I want the record clear that there is a motion
opposition [sic] to summary judgment and we also object
to the court instructing the jury as to more than that is [sic]
summary judgment that was entered.


 [Court]: Okay. As I said, I am going to let you discuss
that in further detail in your -- if you take the stand
yourself, Mr. Bennett. But, I am going to also let you
know because I want the jury to know as much as I can
dispose [sic] the summary judgment. He didn't agree
with me entering that. Okay. All right. And I am going
to let him speak to that a little bit, although that is the
amount that we argue 325 an hour. Go ahead.


Although the trial court instructed the jury that he had determined Coghlan's
reasonable hourly rate by way of summary judgment, he also indicated to Bennett
that he would allow him to address the issue of the reasonable hourly rate before the
jury. Such action had the effect of withdrawing the previously entered partial
summary judgment. And, Bennett did, in fact, present evidence, through his expert
witness, that a reasonable hourly rate in a collection case would be between $75 and
$110 per hour. The parties then, by agreement, submitted the issue of Coghlan's
reasonable hourly rate to the jury. (6) Bennett made no objection to submitting the
issue of Coghlan's reasonable hourly rate to the jury.

Because the issue raised in the previously entered partial summary judgment
was fully litigated at trial and submitted to the jury without objection, we conclude
that, under Progressive, any error in granting the partial summary judgment was
rendered harmless. See Uro-Tech, Ltd. v. Somerset Partners, Corp., 1999 WL
153130, slip op. at *2-4 (Tex. App.--Dallas 1999, no pet.) (holding that appellant
must object to submission of issue that was subject of previously entered summary
judgment in order to complain about summary judgment on appeal).

Bennett also argues that the trial court's instruction to the jury about the partial
summary judgment was an improper comment on the weight of the evidence. (7) After
Coghlan's expert testified that it was his understanding that the trial court had
already determined that $325 was a reasonable hourly billing rate, the trial court
instructed the jury as follows:

 Let me instruct the jurors at this time. In a summary
judgment there is no fact in dispute -- material facts in
dispute as a matter of law. An issue can be decided so the
jury doesn't have to hear evidence. Now, you heard
evidence of it. I can make a ruling. There were some
judicial admissions that I found contained in some of the
documents that were before me whereby in a totally
separate court proceeding that amount was stated by Mr.
Bennett as a reasonable hourly rate. And, therefore, rather
than have to make a decision what an hourly rate was that
was the rate that I said is reasonable but law in this case. 
Okay. Mr. Bennett stated that about Mr. Coghlan but I
didn't make that clear to you guys.


Bennett objected that "to the court instructing the jury as to more than that is
summary judgment that was entered," to which the trial court responded as follows:

 Okay. 

 As I said, I am going to let you discuss that in further detail
in your -- if you take the stand yourself, Mr. Bennett. But,
I am going to also let you know because I want the jury to
know as much as I can dispose the summary judgment. He
didn't agree with me entering that. Okay. All right. And
I am going to let him speak to that a little bit, although that
is the amount that we argue 325 an hour. Go ahead.

We agree that it would be improper for a trial court to grant summary
judgment on an issue, inform the jury of its ruling, and then submit the issue to the
jury for its determination. A trial court cannot "have it both ways" by granting
summary judgment and then seeking to have the jury validate the ruling by giving
the jury a fact question to decide when the jury has already been instructed how to
answer the question.

However, in this case, the trial court never clearly instructed the jury that $325
is, as a matter of law, the reasonable hourly rate for Coghlan. Furthermore, in
response to Bennett's objection, the trial court responds, "Okay," and then indicates
that he would let Bennett address the issue of the reasonable hourly rate. Bennett
never asked for a clarification of this ruling or requested the trial court to instruct the
jury to disregard the court's previous statement about the summary judgment. 
Bennett then agreed to submit the jury question regarding the reasonable hourly rate. 


In addition to failing to request an instruction to disregard, Bennett makes no
attempt to show that the trial court's comment was such that it could not have been
rendered harmless by a proper instruction to disregard. See State v. Wilemon, 393
S.W.2d 816, 818 (Tex. 1965). As such, Bennett fails to show that the trial court's
action "probably caused the rendition of an improper judgment." See Tex. R. App.
P. 44.1(a)(1).

For these reasons, we overrule issue one.SUFFICIENCY OF THE EVIDENCE

In issue two, Bennett contends the evidence is legally and factually insufficient
to support the jury's finding that $325 per hour was a reasonable hourly rate for
Coghlan's attorneys fees.

Legal Sufficiency

 To demonstrate legal insufficiency on appeal, a litigant who did not bear the
burden of proof at trial must show that there is no evidence to support the contested
finding. Croucher v. Croucher, 660 S.W.2d 55, 58 (Tex. 1983); Beard v. Beard,
49 S.W.3d 40, 55 (Tex. App.--Waco 2001, pet. denied). A no-evidence point will
be sustained when (a) there is a complete absence of evidence of a vital fact, (b) the
court is barred by rules of law or of evidence from giving weight to the only evidence
offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than
a mere scintilla, or (d) the evidence conclusively establishes the opposite of the vital fact. 
King Ranch, Inc. v. Chapman, 118 S.W.3d 742, 751 (Tex. 2003). A reviewing court
must view the evidence in a light most favorable to the verdict, indulging every
reasonable inference that supports it, but the court may not disregard evidence that
allows only one inference. City of Keller v. Wilson, 168 S.W.3d 802, 822 (Tex.
2005). "The final test for legal sufficiency must always be whether the evidence at
trial would enable reasonable and fair-minded people to reach the verdict under
review." Id. at 827. When both legal and factual sufficiency challenges are raised on
appeal, we must first examine the legal sufficiency of the evidence. See Glover v. Tex.
Gen. Indemnity. Co., 619 S.W.2d 400, 401(Tex. 1981).

 Coghlan's expert, John Tyler, a board-certified Houston trial attorney, testified
that he was familiar with "proving up reasonable and customary fees in the State of
Texas" and that he had an opinion as to the fees that would be reasonable, usual, and
customarily charged in a case such as this. Tyler testified that 450-500 hours on a case
of this nature was not unreasonable and that at 500 hours a reasonable fee would be
$162,500, which, when divided out, equals $325 an hour--the exact figure the jury used

to answer question 2. Tyler also testified that a rate of $325 an hour would be reasonable
in the event of future appeals. During Tyler's testimony, Coghlan introduced Plaintiffs
exhibit 1C, which summarized Tyler's testimony and provided that "400-500 hours at $325
an hour" would be reasonable for the services provided by Coghlan in the case. Coghlan
himself testified that market surveys showed that the hourly rate of an average Houston
partner was $363 per hour.

 Accordingly, we hold that there is more than a scintilla of evidence to support the
jury's finding that $325 an hour was a reasonable rate for Coghlan to charge in this
case. 

Factual Sufficiency

 In reviewing factual sufficiency, we must consider, examine, and weigh all of the
evidence in the record. Maritime Overseas Corp. v. Ellis, 971 S.W.2d 402, 406-07 (Tex.
1998). In doing so, we no longer consider the evidence in the light most favorable to the
finding; instead we consider and weigh all the evidence and set aside the finding only if it is
so contrary to the great weight and preponderance of the evidence as to be clearly wrong and
unjust. Gooch v. Am. Sling Co., 902 S.W.2d 181, 183-84 (Tex. App.--Fort Worth 1995,
no writ). When reviewing a jury verdict to determine the factual sufficiency of the evidence,
the party attacking a finding on which an adverse party bore the burden of proof must show
that the record presents "insufficient evidence" to support the finding. Id. In assessing
the evidence under this standard, we do not pass on the witnesses' credibility or
substitute our judgment for that of the trier of fact. Vickery v. Comm'n for Lawyer
Discipline, 5 S.W.3d 241, 258 (Tex. App.--Houston [14th Dist.] 1999, pet. denied).

 In his brief, Bennett points to no evidence suggesting a reasonable billing rate other
than $325 per hour. However, we note that Bennett's expert witness, Greg Cavalier,
testified that, in his opinion, $75-$150 an hour was a reasonable billing rate for collection
work. In a battle of competing expert testimony, as is the case here, it is the sole prerogative
of the jury to determine the weight and credibility of the witnesses. Cruz v. Paso DelNorte
Health Found, 44 S. W.3d 622, 646 (Tex. App.--El Paso 2001, pet. denied).

 Accordingly, the jury's finding that $325 an hour was a reasonable rate for Coghlan
to charge in this case is not against the great weight and preponderance of the evidence.

 We overrule issue two. (8)

ATTORNEYS FEES AFTER PAYMENT OF UNDERLYING JUDGMENT

 In issue three, Bennett contends that evidence is legally and factually insufficient
to support the amounts awarded by the jury because a substantial portion of the fees
were incurred after the underlying judgment was paid and a receiver had been
appointed. Specifically, Bennett argues that the court "should not allow [Coghlan]
attorney's fees for collecting attorney's fees."

 Under section 31.002(e) of the Civil Practices and Remedies Code, a judgment
creditor is entitled to recover reasonable costs, including attorney's fees, incurred when
pursuing a turnover claim. Nothing in the statute indicates that attorney's fees must
cease when the amount of the judgment is recovered and/or a receiver is appointed.

 In this case, after the underlying judgment was satisfied, Bennett requested a jury
trial on the issue of the amount of attorney's fees due Coghlan under section 31.002(e).
After Bennett filed several motions and other pleadings, and a five-day trial was held. To
cut off the accrual of attorney's fees when the underlying judgment was satisfied
would have left Coghlan unable to recover the costs of preparing for and
participating in the trial demanded by Bennett. We hold that attorney's fees can be
recovered pursuant to section 31.002(e), if incurred, any time before final judgment. Accordingly, we overrule issue three.DENIAL OF MOTION FOR CONTINUANCE

 In issue four, Bennett contends the trial court erred by denying his motion for
continuance. Specifically, Bennett contends that, because he had a "vacation letter" (9)
on file with the court that covered the week the case was set for trial, the trial court had
a mandatory duty to continue the case. Bennett also argues that a continuance should
have been granted because he was unable to conduct discovery adequately due to a
stay the trial court had entered. The granting or denial of a motion for continuance
is within the discretion of the trial court and will not be reversed unless the record
shows a clear abuse of discretion. State v. Wood Oil Distrib., Inc., 751 S.W.2d 863,
865 (Tex. 1988). 

Vacation Letter

 Bennett relies on In re North American Refractories Co, 71 S.W.3d 391, (Tex.
App.--Beaumont 2001, orig. proceeding), in which the court of appeals held that the
local rule providing for vacation letters was mandatory, and that mandamus would lie
to compel a continuance on the basis of a properly filed vacation letter. Id. at 394. In
so holding, the court recognized that trial counsel could waive his right to rely on a
vacation letter by acting in a manner inconsistent with such reliance. Id. (citing
Siegler v. Williams, 658 S. W.2d 236, 239 (Tex. App.--Houston [1st Dist.] 1983, no
writ)).

 In Siegler, a member of the appellant's counsel's firm agreed to a preferential
setting during the week which the appellant's counsel had previously designated for
vacation. Id. The court held that [u]nder these circumstances, the court and the
appellee were entitled to rely upon the agreed preferential setting regardless of the
appellant's counsel's vacation letter." Id.

 This case is more like Seigler than In re North American Refractories. The
record shows that appellant filed his vacation letter on January 15, 2003, to cover the
week of August 4, 2003. However, on April 15, 2003, some three months after filing
his vacation letter, Bennett agreed to a preferential trial setting of August 4, 2003. We
hold that, because Bennett acted in a manner inconsistent with his reliance on the
vacation letter, the trial court did not err in denying his motion for continuance based
on the vacation letter. 

Lack of Discovery

 Bennett also complains that his motion for continuance should have been granted
so that he could conduct discovery, which he contends he was prevented from doing by
a stay order entered by the court some eight months before trial. (10) Specifically, appellant

argues that "[b]y entering an order that prevented Appellant from obtaining answers to
discovery previously propounded on Appellee and from filing any further discovery, the
trial court effectively imposed a discovery sanction against appellant."

 The record shows that on December 8, 2002, the trial court signed an order
that stated, "Defendant's discovery propounded upon Plaintiff is stayed." The order
did not, as Bennett argues, prohibit him from filing any further discovery. Furthermore,
in a motion filed on July 21, 2003, Bennett states that the order stayed only "written
discovery." Bennett did not serve any further discovery requests or notice any
deposition until July 2003, less than one month before trial and after all applicable
discovery deadlines had passed. Both parties agree that on July 18, 2003, the trial court
verbally lifted the stay. Thereafter, Bennett filed a motion to compel responses to both
his previously filed discovery and the discovery that the trial court had, at the July 18
hearing, orally granted him permission to conduct. Bennett's motion to compel was
heard on July 25, 2006. However, the hearing was not recorded and is not a part of the
appellate record. Absent a record from the July 25, 2006 hearing on Bennet's motion
to compel, we cannot conclude the trial court abused its discretion in denying
Bennett's motion to compel. See In re Pilgrims Pride Corp., 187 S.W.3d
197, 199 (Tex. App.--Texarkana 2006, orig. proceeding) ("Without a reporter's
record, we could only speculate whether there was evidence to support the trial
court's denial of [relator's] motions to compel discovery, to delay the trial date, and
to enter a scheduling order.").

 Based on the record before us, we cannot conclude that the trial court erred by
refusing to compel Coghlan to respond to Bennett's discovery requests or to grant
a continuance so that Bennett could conduct further discovery.

 We overrule issues four and five.

CONCLUSION

 We affirm the judgment of the trial court.

 Sherry Radack 

 Chief Justice

Panel consists of Chief Justice Radack and Justices Alcala and Bland.

1. 
[1] Piggly Wiggly Clarksville,Inc. et al v. Mrs. Baird's Bakeries, Inc./ Johnny B. Tucker
d/b/a H & M Grocery, et al. v. Mrs. Baird's Bakeries, Inc. No. 395CV48, in the
United States district Court for the Eastern District of Texas, Paris Division ("the
Mrs. Baird litigation.").

2. 
[2] Kelly Coghlan and Coghlan & Assocs. v. Robert Bennett, no. 98-2125-B in the 134th
District Court, Gregg County, Texas (hereinafter, "the Gregg County litigation.").
3. 
[3] Tex. Civ. Prac. & Rem. Code Ann. § 31.002 (Vernon Supp. 2006).
4. 
[4] Bennett's response to the motion for partial summary judgment was not originally
included in the appellate record, though he insisted that it had been filed. 
Accordingly, this Court abated the appeal to the trial court to determine whether
Bennett's response had been lost or destroyed as provided in Tex. R. App. P. 34.5(e). 
At the abatement hearing, the trial court concluded that Bennett's response should be
included in the appellate record, and the record was so supplemented.

5. 
[5] Bennett argued that the order granting Coghlan's motion for partial summary
judgment was never signed and was not a part of the appellate record. Accordingly,
this Court abated the appeal pending a hearing in the trial court to determine whether
the order had, in fact, been signed, and whether it should have been included in the
record as provided in Tex. R. App. P. 34.5(e). At the abatement hearing, the trial
judge concluded that he had signed the order granting partial summary judgment and
that it should be included in the appellate record. The record was so supplemented.
6. 
 ' 
 
 
 
 
 
7. 
 
 -- 
 
 
 -- 
 " " 
8. 
[8] To the extent that Bennett's second issue is based on the trial court's remarks to the
jury during trial, indicating that there were no fact issues as to the rate per hour of
attorney's fees, we note that the trial court sustained Bennett's objection, but Bennett
never requested an instruction to disregard the comment. A party waives appellate
review when it fails to object to a trial judge's comments and request an instruction
to disregard unless the comment could not have been rendered harmless by an
instruction to disregard. Dow Chem. Co. v. Francis, 46 S.W.3d 237, 241 (Tex. 2001);
see also Capellen v. Capellen, 888 S.W.2nd 539, 547 (Tex. App.--El Paso 1994, writ
denied) ("Unless the comment by the judge is so blatantly and obviously prejudicial
that it cannot be cured, an objection and request for instruction must be made in order
to preserve error.") We hold that an instruction to disregard, if requested, would have
rendered the trial court's comment harmless. Thus, the failure to request such an
instruction waives error. 
9. 
[9] Rule 8 of the Harris County Civil Court Rules states that "[t]he County Civil Courts
will honor written designations for Summer vacation weeks or non-Summer vacation
weeks filed with the District Clerk pursuant to Local Rules of the Civil Trial Division
of the Judicial Courts of Harris County, except for cases preferentially set for trial
prior to the vacation designation."
10. 
[10] The denial of discovery is also raised in Bennett's fifth issue on appeal. Because the
discovery order is directly related to Bennett's motion for continuance, we discuss
issues four and five together.