**Affirmed as Modified and Majority and Concurring and Dissenting Opinions filed December 15, 2022.**



**In The**

# Fourteenth Court of Appeals

---

### NO. 14-20-00696-CV

---

**JOSEPH BRYAN DESSENS, Appellant**

**V.**

**VICTORIA ARGEROPLOS, Appellee**

---

**On Appeal from the 280th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2020-19658**

---

## MAJORITY OPINION

Appellant Joseph Bryan Dessens ("Joseph") appeals the trial court's rendition of a lifetime protective order for stalking pursuant to former Code of Criminal Procedure 7A. In three issues, Joseph argues the evidence is insufficient to support (1) the finding that he engaged in behavior constituting stalking; (2) certain conditions and restrictions imposed in the protective order; and (3) the award of attorney's fees to appellee Victoria Argeroplos ("Victoria"). For the reasons below, we modify the protective order and affirm as modified.

BACKGROUND

Joseph and Victoria were married in 2013 and received a final decree of divorce in April 2018. After the divorce, they had no substantive contact for over a year.

In June 2019, Joseph sent a text message to Victoria attaching an article with a note suggesting that Victoria ended their relationship instead of helping Joseph deal with his alcoholism. Joseph also accused Victoria of sleeping with her "coke dealer." Victoria responded only with: "I'm not going to dignify that with a response."

There was no contact between the two until March 21, 2020, when Joseph sent the following email to Victoria and several of her friends and family members:

> You started an LLC with your coke dealer. Epic. Was it rape? since he got you high on coke before y'all fucked while we were married? I have no clue how to classify you fucking him after he fed you drugs. You owe me $100k for tuition. $60k for the car. $30k for the ring. But instead you're fucking a Chinese commie coke dealer. How does it feel being a traitor?

The next day Joseph texted Victoria about contacting her employer:

> Starting to spam your work about you having an llc with your coke dealer. You shouldn't be so reckless while representing a company. Call me a liar? I will send them the hair I collected. It's been tested and its viable.

On March 23, 2020, Joseph emailed Victoria's employer with the following message: "My ex-wife Victoria [] works for you. She started a business with her coke dealer. Drug test her." Victoria's employer informed her about the email and Victoria filed for a protective order shortly thereafter.

In July 2020, the trial court held a hearing on Victoria's application for a protective order. The trial court granted the application and rendered a final

protective order on August 14, 2020. Joseph requested findings of fact and conclusions of law, which the trial court signed on October 13, 2020. The findings of fact only mention the March 22, 2020 email as evidence supporting the protective order.

## ANALYSIS

Joseph raises three issues on appeal: (1) the evidence was legally and factually insufficient to prove that Joseph engaged in the offense of stalking; (2) the evidence was legally and factually insufficient to support certain conditions ordered by the trial court in the protective order; and (3) the evidence was legally and factually insufficient to support the trial court's award of attorney's fees to Victoria. On appellate review, a trial court's findings of fact have the same force and effect as a jury's verdict. *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991).

## I. Statutory Background

The trial court issued the protective order against Joseph in accordance with Code of Criminal Procedure chapter 7A.[1] The Code of Criminal Procedure grants a trial court authority to issue a protective order "without regard to the relationship between the applicant and the alleged offender" if the applicant is a victim of certain crimes, including stalking. *See* Act of May 10, 2011, 82nd Leg., R.S., ch. 135, § 2, 2011 Tex. Gen. Laws 640, 640 (repealed 2019). A trial court "shall issue a protective order" if it finds that "there are reasonable grounds to believe that the applicant is the victim of . . . stalking." *See* Act of May 10, 2011, 82nd Leg., R.S., ch. 135, § 4, 2011 Tex. Gen. Laws 640, 641 (repealed 2019). "Stalking" is a

___

[1] Since the rendition of the final protective order, the Texas legislature enacted non-substantive changes to the Code of Criminal Procedure and placed the provisions relating to protective orders for stalking in Code of Criminal Procedure article 7B. *See* Act of May 21, 2019, 86th Leg., ch. 469, § 1.02, 2019 Tex. Gen. Laws, 1065, 1066.

criminal offense under the Penal Code. *See* Tex. Penal Code Ann. § 42.072.

A person commits the offense of stalking if that person "on more than one occasion and pursuant to the same scheme or course of conduct that is directed specifically at another person, knowingly engages in conduct" that, as relevant here:

> (1) constitutes the offense of harassment;
>
> (2) causes the other person . . . to feel harassed, annoyed, alarmed, abused, tormented, embarrassed, or offended; and
>
> (3) would cause a reasonable person to . . . feel harassed, annoyed, alarmed, abused, tormented, embarrassed, or offended.

*Id*.

A person commits the offense of harassment "if, with intent to harass, annoy, alarm, abuse, torment, or embarrass another, the person:"

> (1) initiates communication and in the course of the communication makes a comment, request, suggestion, or proposal that is obscene;
>
>             *                   *                 *
>
> (7) sends repeated electronic communications in a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass, or offend another[.]

*Id*. § 42.07. The term "obscene" is defined in the harassment statute as a communication "containing a patently offensive description of or a solicitation to commit an ultimate sex act, including sexual intercourse . . . ." *Id*. § 42.07(b)(3). The term "electronic communication" is defined in the statute as including, among other things, communications sent via electronic mail and text messages. *Id*. § 42.07(b)(1)(A).

Before the trial court can enter an order, it must hold a hearing to determine

"whether there are reasonable grounds to believe that the applicant is the victim of . . . stalking." *See* Act of May 10, 2011, 82nd Leg., R.S., ch. 135, § 4, 2011 Tex. Gen. Laws 640, 641 (repealed 2019).

## II.    Evidence Joseph Engaged in Stalking or Harassment

In his first issue, Joseph asserts the evidence was legally and factually insufficient to prove that he engaged in conduct constituting stalking. *See* Tex. Penal Code Ann. § 42.072.

### A.    Omitted Findings of Fact and Conclusions of Law

Asserting that the trial court's findings of fact and conclusions of law describe only a single instance of harassment or stalking, Joseph argues that the final protective order is not supported by legally or factually sufficient evidence as it does not establish a "course of conduct" as required by the Penal Code.

Rule of Civil Procedure 299 states the following concerning the import and review of findings of fact:

> When findings of fact are filed by the trial court they shall form the basis of the judgment upon all grounds of recovery and of defense embraced therein. The judgment may not be supported upon appeal by a presumed finding upon any ground of recovery or defense, no element of which has been included in the findings of fact; but when one or more elements thereof have been found by the trial court, omitted unrequested elements, when supported by evidence, will be supplied by presumption in support of the judgment. Refusal of the court to make a finding requested shall be reviewable on appeal.

Tex. R. Civ. P. 299. The rule plainly states that findings of fact "shall form the basis of the judgment." *Id*. This does not mean that the trial court must make a finding as to every element of a cause of action. *See id*. So long as the trial court makes a finding as to at least one element of a cause of action, this court may presume the trial court made implied findings as to the remaining elements. *See id*;

5

*see also Clinton v. Gallup*, 621 S.W.3d 848, 850 (Tex. App.—Houston [14th Dist.] 2021, no pet.).

Though Joseph complains on appeal that the trial court failed to make all the required findings, he did not make the trial court aware of this omission by requesting additional findings. *Vickery v. Comm'n for Lawyer Discipline*, 5 S.W.3d 241, 255-56 (Tex. App.—Houston [14th Dist.] 1999, pet. denied) ("[A] request for additional findings is in the nature of an objection[.]"). "In a bench trial, the appellant may request additional findings on omitted elements to prevent them from being deemed on appeal." *Id.* at 254; *see also* Tex. R. Civ. P. 298 ("any party may file with the clerk of the court a request for specified additional or amended findings or conclusions"). Joseph never requested any additional or amended findings of fact. Therefore, we presume the trial court's omission is inadvertent and we are authorized by Rule 299 to presume the trial court impliedly made any findings, supported by the record, that are necessary to support its judgment.[2] *Vickery*, 5 S.W.3d at 258; *see also* Tex. R. Civ. P. 299. The trial court made the following finding:

> After almost two years post the divorce of the parties, where there was nominal interaction. A trivial meeting after the divorce took place to discuss the exchange of minor personal property after divorce, [Joseph] engaged in the following behavior:
>
> a. After not sleeping for 48-hour period, where Joseph [] testified, he was suffering from emotional problems. On March 22, 2020 at 4:48

---

[2] As discussed at length in *Vickery*, appellate courts presume the trial court impliedly made findings, supported by the record, because public policy supports the validity of judgments. *Vickery*, 5 S.W.3d at 251 ("[T]he presumption of validity extends to judgments derived with or without the benefit of a jury. In fact, the presumption of validity is perhaps even stronger in a bench trial where an experienced judge exercises the functions of a jury and is charged with the responsibility of assessing the credibility of the witnesses, logically evaluating the evidence, rationally resolving factual disputes on the basis of such evidence, and correctly applying the law to the facts"). Only when it is clear that the omission was intentional, not inadvertent, does the presumption not apply. *Id*. at 252-53.

> a.m., Joseph [] forwarded the following text message to 7 individual persons who are being [Victoria's] mother, and the others were church members; Godsister, childhood friend who attended elementary school with [Victoria], the church member, wife and children interacted with [Victoria] on many[.]

The findings of fact describe only one email sent by Joseph to Victoria and her close friends and family. Because at least one element of the offense was found by the trial court, we may supply the omitted elements supported by the evidence. *See* Tex. R. Civ. P. 299. We turn now to the evidence.

## B.     Standard of Review

When both legal and factual sufficiency challenges are raised on appeal, we must first examine the legal sufficiency of the evidence. *City of Houston v. Cotton*, 171 S.W.3d 541, 546 (Tex. App.—Houston [14th Dist.] 2005, pet. denied). In conducting a legal sufficiency review, we must consider the evidence in the light most favorable to the appealed order and indulge every reasonable inference that supports it. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). The evidence is legally sufficient if it would enable reasonable and fair-minded people to reach the decision under review. *Id*. at 827. This court must credit favorable evidence if a reasonable trier of fact could, and disregard contrary evidence unless a reasonable trier of fact could not. *Id*. The trier of fact is the sole judge of the witnesses' credibility and the weight to be given their testimony. *Id*. at 819.

This court may sustain a legal sufficiency challenge only if the record reveals one of the following: (1) the complete absence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a scintilla; or (4) the evidence established conclusively the opposite of the vital fact. *Id*. at 810. When the evidence offered to prove a vital fact is so

7

weak as to do no more than create a mere surmise or suspicion of its existence, the evidence is less than a scintilla and, in legal effect, is no evidence. *See Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004).

In reviewing factual sufficiency, we must examine the entire record, considering both the evidence in favor of and contrary to the challenged findings. *See Mar. Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406-07 (Tex. 1998); *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam). We may set aside the verdict for factual sufficiency only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *See Mar. Overseas Corp.*, 971 S.W.2d at 407.

### C. Sufficiency of the Evidence

Joseph and Victoria were the only witnesses to testify at the hearing. Victoria testified that nearly two years after her divorce from Joseph, she received the following email from Joseph:

> You started an LLC with your coke dealer. Epic. Was it rape? since he got you high on coke before y'all fucked while we were married? I have no clue how to classify you fucking him after he fed you drugs. You owe me $100k for tuition. $60k for the car. $30k for the ring. But instead you're fucking a Chinese commie coke dealer. How does it feel being a traitor?

The email copied several of Victoria's friends and family members as recipients. When asked if this email "alarm[ed]" her, Victoria replied "[v]ery much so."

According to Victoria, the following day Joseph sent her a text message stating that he was going to contact her employer and tell them that Victoria "started an LLC with a coke dealer." He also threatened to submit a viable hair sample of hers for testing. Joseph did, in fact, send an email to Victoria's employer stating they should drug test her. Victoria testified that this email to her

8

employer made her "concerned about losing [her] job."

These three communications taken together illustrate a course of conduct, on more than one occasion, that was directed specifically at Victoria by Joseph that caused Victoria to feel harassed, annoyed, and alarmed and would cause a reasonable person to feel harassed, annoyed, and alarmed. *See* Tex. Penal Code Ann. § 42.072. These emails and text communications also constitute the offense of harassment as the evidence at the hearing reflected that Joseph sent repeated electronic communications in a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass, or offend Victoria. *See id.* § 42.07. Viewing the evidence in the light most favorable to the trial court's order, we hold Victoria's testimony, along with the electronic communications in evidence, provided more than a scintilla of evidence to support the trial court's findings and imposition of a protective order.

We turn next to Joseph's factual sufficiency challenge. While Joseph testified during the hearing, he did not offer any testimony controverting Victoria's version of the events or the electronic communications. He admitted that he sent the communications, though he disputed that his motivation was to harass, annoy, or alarm Victoria. He testified that he thought contacting her employer might help her to get into a rehabilitation program. He stated that when he sent the communications he had not slept in several days and was feeling stressed and isolated due to the COVID-19 pandemic and illness in his family.

As the sole judge of the credibility of the witnesses, the trial court was free to accept or reject Victoria's uncontroverted testimony, as well as Joseph's testimony. *See City of Keller*, 168 S.W.3d at 819; *In re Marriage of Moncur*, 640 S.W.3d 309, 317 (Tex. App.—Houston [14th Dist.] 2022, no pet.). The evidence is not too weak to support the trial court's findings that Joseph engaged in conduct

constituting harassment and stalking, nor are the findings so against the overwhelming weight of the evidence as to be clearly wrong or manifestly unjust. We conclude the evidence is factually sufficient to support the findings in the protective order.

Joseph also complains the trial court did not identify the specific subsection(s) of the harassment statute it found he had violated in either its oral rendition or in its findings of fact and conclusions of law. However, Joseph's argument is premised on the assumption that the trial court's findings of fact must identify each subsection of the statute violated, and he offers no legal authority for this argument. The trial court was required to find whether there were reasonable grounds to believe that the applicant was the victim of stalking and, if the court made such a finding, it was required to issue a protective order. *See* Act of May 10, 2011, 82nd Leg., R.S., ch. 135, § 4, 2011 Tex. Gen. Laws 640, 641 (repealed 2019). The final protective order already included a finding that Joseph engaged in "conduct directed specifically to [Victoria] that constitutes harassment and stalking as defined under Texas Penal Code § 42.07 & 42.072." Therefore, it contained the findings required by statute. The trial court was not required to make a finding on every sub-part of the statute violated. *See Nicholas v. Envtl. Sys. (Int'l) Ltd.*, 499 S.W.3d 888, 894-95 (Tex. App.—Houston [14th Dist.] 2016, pet. denied) ("The trial court is not required to set out in detail every reason or theory by which it arrived at its final conclusions. Nor is the trial court required to accept amended findings and conclusions that merely resolve evidentiary issues or are otherwise unnecessary.").

We overrule Joseph's first issue.

## III.    Conditions of the Protective Order

In his second issue, Joseph challenges the following conditions of the

protective order: (1) the lifetime duration of the protective order; (2) the lifetime prohibition on possession of firearms; (3) the requirement that Joseph attend a battering intervention and protection program ("BIPP"); (4) the requirement that Joseph submit to a psychological evaluation; and (5) the requirement that Joseph submit to an alcohol evaluation. In response, Victoria argues that the trial court had discretion to impose all challenged conditions, as well as the attorney's fees, and that the trial court's decision should be affirmed.

## A.    Standard of Review

We review the conditions included in a protective order for an abuse of discretion. *In re Doe*, 19 S.W.3d 249, 253 (Tex. 2000) ("The abuse of discretion standard applies when a trial court has discretion either to grant or deny relief based on its factual determinations."); *see* Act of May 17, 2013, 83rd Leg., R.S., ch. 760, § 2, 2013 Tex. Gen. Laws 1928, 1928-29 (repealed 2019) ("[i]n a protective order issued under this subchapter, the court *may . . .* order the alleged offender to take action as specified by the court that the court determines is necessary or appropriate to prevent or reduce the likelihood of future harm") (emphasis added); *see generally Rodriguez v. Doe*, 614 S.W.3d 380, 385-86 (Tex. App.—Houston [14th Dist.] 2020, no pet.) (noting that Family Code section 85.022(b), which also governs protective orders, gives the trial court discretion to prohibit certain conduct).

A trial court abuses its discretion if it acts arbitrarily or unreasonably or without reference to guiding rules or principles. *Berkel & Co. Contractors, Inc. v. Lee*, 612 S.W.3d 280, 287 (Tex. 2020). Under an abuse of discretion standard, the legal and factual sufficiency of the evidence are relevant factors in determining whether the trial court abused its discretion, but they are not independent grounds of error. *See Zeifman v. Michels*, 212 S.W.3d 582, 587 (Tex. App.—Austin 2006,

11

pet. denied); *see also Cox v. Walden*, No. 13-20-00283-CV, 2022 WL 120014, at *5-6 (Tex. App.—Corpus Christi Jan. 13, 2022, no pet.) (mem. op.). A trial court does not abuse its discretion when some evidence reasonably supports its decision. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 211 (Tex. 2002).

### B.     Duration of the Protective Order

Joseph argues the evidence was factually insufficient to support the lifetime duration of the protective order. He acknowledges that while the statute allowed the trial court to issue the protective order for his lifetime, it was manifestly unjust to do so under the facts of the case.

The Code of Criminal Procedure allows a trial court, when the court has found reasonable grounds to believe the applicant is the victim of stalking, to issue a protective order "for the duration of the lives of the offender and victim . . . or for any shorter period stated in the order." *See* Act of May 19, 2011, 82nd Leg., R.S., ch. 238, § 2, 2011 Tex. Gen. Laws 280, 281 (repealed 2019). The trial court thus had statutory authority to make the protective order issued in this case effective for Joseph's lifetime, or for any shorter period of time in its discretion. *See Straughan v. Girsch*, No. 14-20-00763-CV, 2022 WL 2977049, at *3 (Tex. App.—Houston [14th Dist.] July 28, 2022, no pet.) (mem. op.).

Victoria requested the protective order be granted for the duration of Joseph's lifetime because she was being harassed and stalked two years after her divorce. She explained to the court that she did not believe that a short time period would be enough. The trial court agreed and set the duration of the protective order for Joseph's lifetime. In contrast to a protective order issued pursuant to the Family Code which requires certain findings be made to support a protective order exceeding two years in duration, there were no factors or findings required constraining the trial court's discretion. *Compare* Act of May 19, 2011, 82nd Leg.,

12

R.S., ch. 238, § 2, 2011 Tex. Gen. Laws 280, 281 (repealed 2019) *with* Tex. Fam. Code Ann. § 85.025(a), (a-1). Therefore, we conclude this decision was within the trial court's authority and the trial court had sufficient evidence on which to exercise its discretion.

### C. Possession of a Firearm

Under the applicable statute, the trial court was permitted to prohibit the respondent from "possessing a firearm". *See* Act of May 17, 2013, 83rd Leg., R.S., ch. 760, § 2, 2013 Tex. Gen. Laws 1928, 1928-29 (repealed 2019). Pursuant to that provision, the trial court prohibited Joseph from "possessing a firearm or ammunition" for the duration of his life. Challenging that condition on appeal, Joseph points out that the evidence at trial did not show a history of physical harm, bodily injury, or threats of violence between himself and Victoria.[3]

We agree with Joseph. The record shows that Joseph never physically harmed or threatened to physically harm Victoria during their relationship or after their divorce. The record also shows that Joseph never physically harmed or threatened to harm Victoria's family. Moreover, the record does not contain any evidence showing that Joseph has harmed or threatened to harm any person with a firearm. Rather, as the evidence discussed above shows, the actions at issue were limited to electronic communications. This evidence alone does not warrant prohibiting Joseph from possessing a firearm or ammunition for the duration of his life.

---

[3] In his appellate brief, Joseph mentions in passing and without briefing that the lifetime prohibition on possessing a firearm infringes on his rights under the Second Amendment to the United States Constitution. *See* U.S. Const. amend. II. However, because Joseph did not raise this complaint in the trial court, he did not preserve the issue for appellate review. *See* Tex. R. App. P. 33.1(a); *see also In re L.M.I.*, 119 S.W.3d 707, 710-11 (Tex. 2003) (holding that, to preserve a complaint for appellate review, including a constitutional complaint, the party must present the complaint to the trial court and obtain a ruling thereon).

Therefore, the trial court abused its discretion when it ordered that Joseph was prohibited from possessing a firearm or ammunition. *See In re Doe*, 19 S.W.3d at 253. We sustain Joseph's second issue in part as to this condition of the protective order.

### D. Psychological Evaluation and Alcohol Assessment

Joseph also argues in his second issue that the evidence was factually and legally insufficient to support the conditions in the protective order requiring him to participate in (1) a psychological evaluation, and (2) an alcohol assessment. He acknowledges it was legally permissible for the trial court to order him to submit to a psychological evaluation, but argues the evidence presented at trial was so weak as to make it manifestly unjust. We disagree.

The requirement that an alleged offender submit to a psychological evaluation or alcohol assessment is not specifically enumerated in article 7A. *See* Act of May 17, 2013, 83rd Leg., R.S., ch. 760, § 2, 2013 Tex. Gen. Laws 1928, 1928-29 (repealed 2019). However, the trial court had the power to require Joseph to participate in such evaluations so long as the trial court determined it was necessary or appropriate to prevent or reduce future harm. *See id.* The trial court's discretion to enact conditions in the protective order is limited only by the requirement that such conditions must be "necessary or appropriate to prevent or reduce the likelihood of future harm." *Id.* Therefore, the trial court's determination or exercise of discretion should be supported by evidence indicating the appropriateness or necessity of the condition. *See id.*

The evidence at the hearing revealed that Joseph was struggling with isolation during the COVID-19 pandemic, his father's declining cognitive health, and his sister's cancer diagnosis. Victoria testified that Joseph had problems with alcohol during their marriage, even though Joseph denied he was drinking at the

14

time he sent the electronic messages. Though Joseph claims there was no evidence at the hearing that he had any mental health diagnoses, the lack of an official diagnosis does not negate Joseph's own testimony that when he sent the electronic communications to Victoria it was a stressful time and he was "going through a lot." Joseph's conduct — which the trial court found to constitute stalking — also raises the issue of Joseph's psychological state. Therefore, the trial court received sufficient evidence at the hearing to exercise its discretion in requiring Joseph to submit to a psychological evaluation, and such a condition was not contrary to the overwhelming weight of the evidence or clearly wrong.

Similarly, Joseph argues there was no evidence presented at the hearing that he had consumed alcohol since the end of his marriage to Victoria. He also argues there was no evidence received at the hearing that alcohol was a contributing factor in sending the email communication to Victoria. Therefore, he argues there was no evidence supporting the trial court's finding that his participation in an alcohol assessment was necessary to prevent stalking. However, given the evidence before the court reflecting that Joseph had struggled with alcohol or alcoholism in the recent past, as well as Victoria's testimony that his abusive communications post-divorce escalated from her experience during their marriage, we conclude the trial court received sufficient evidence at the hearing to exercise its discretion in requiring Joseph to submit to an alcohol assessment as necessary to prevent future harm.

We overrule Joseph's challenge to the conditions in the protective order that he submit to a psychological evaluation and alcohol assessment.

### E.     Battering Intervention and Prevention Program ("BIPP")

Joseph further argues the evidence was legally and factually insufficient to support the condition in the protective order requiring him to participate in a BIPP

because there was no evidence at trial reflecting a history of physical harm, bodily injury, or threats of violence between Joseph and Victoria. Joseph argues the 18-week program was ordered by the trial court without any basis in the evidence.

We agree. BIPP is a program created by Texas statute to provide "educational services and intervention designed to help the batterers stop their abusive behavior." *See* Tex. Code Crim. Proc. Ann. art. 42.141 §1(7)(B). "Batterer" is defined as "a person who commits repeated acts of violence or who repeatedly threatens violence against another". *Id*. §1(1).

But here, the record is devoid of any evidence showing that Joseph has engaged in acts of physical violence or has threatened physical violence against another. Without any evidence showing a nexus between the actions at issue and BIPP's aims, we conclude that the imposition of this condition constitutes an abuse of direction. *See In re Doe*, 19 S.W.3d at 253.

We sustain Joseph's second issue in part and remove the condition of the protective order requiring him to participate in a BIPP.

### F.    Attorney's Fees

Finally, Joseph challenges the trial court's award of attorney's fees and raises two arguments: (1) the Code of Criminal Procedure does not provide for the award of attorney's fees in an application for protective order under article 7A; and (2) the evidence was not legally and factually sufficient to support the award.

Victoria argues that Joseph's challenge to the award of the attorney's fees should be reviewed under the abuse-of-discretion standard instead of under the sufficiency-of-the-evidence standard. Relying on *Bocquet v. Herring*, Victoria argues that an award of attorney's fees is reviewed under the abuse-of-discretion standard. 972 S.W.2d 19, 20 (Tex. 1998). However, *Bocquet* discusses the

limitations on the discretion of a trial court to award attorney's fees and one of those requirements is that attorney's fees must be reasonable and necessary. *Id.* at 21. There also must be sufficient evidence to support the award of attorney's fees as reasonable and necessary. *Id.* This inquiry also requires a review of both the discretion of the court and the evidence supporting the award. *Id.*

Code of Criminal Procedure Chapter 7A did not contain any provision allowing for the recovery of attorney's fees. However, Chapter 7A provided that Family Code Title 4 applies to stalking protective orders unless the provisions of the two statutes conflict. *See* Act of May 20, 2003, 78th Leg., R.S., ch. 836, § 1, art. 7A.04, 2003 Tex. Gen. Laws 2622, 2623 (repealed 2019). Family Code chapter 81 provides the trial court with discretion to award attorney's fees against the party found to have committed family violence. Tex. Fam. Code Ann. § 81.005. Because he argues the trial court did not make a finding that he had committed family violence, Joseph asserts that Chapter 81 does not apply. However, Joseph did not object in the trial court to the trial court's discretion to award attorney's fees and raises only a sufficiency challenge on appeal. Therefore, we conclude that Joseph has waived this argument and we need not address it. *See* Tex. R. App. P. 33.1.

We turn now to the sufficiency of the evidence supporting the award of attorney's fees, which may be raised for the first time on appeal. *See* Tex. R. Civ. P. 324(a), (b). At the hearing, Victoria's lawyer, Rick Ramos, testified that while he charges an hourly rate for his services, he only charged Victoria a flat fee of $2,500. He stated the amount of work he performed exceeded $2,500 in value, but he was only seeking a reasonable and necessary amount for filing the protective order. Ramos offered no estimate of the number of hours devoted to the case or the tasks in which he engaged. He also did not introduce any bills or fee

17

statements into evidence.

An award of attorney's fees must be supported by evidence that the fees are reasonable and necessary. *See Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 484 (Tex. 2019) ("When fee-shifting is authorized, whether by statute or contract, the party seeking a fee award must prove the reasonableness and necessity of the requested attorney's fees."). *Rohrmoos* established that the lodestar analysis is to be applied in any situation in which an objective calculation of reasonable work times a reasonable rate can be employed. *Id*. at 497-98. Generally, while contemporaneous billing records are not required, legally sufficient evidence to establish a reasonable and necessary fee needs to include a description of the particular services performed, the identity of each attorney who and approximately when that attorney performed the services, the reasonable amount of time required to perform the services, and the reasonable hourly rate for each attorney performing the services. *See id*. at 497-98, 501-02, 502-03. This base lodestar figure constitutes a presumptively reasonable and necessary fee for prosecuting or defending the prevailing party's claim through the litigation process. *Id*. at 498-502 (base lodestar accounts for most relevant considerations set forth in *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997), and can be enhanced or reduced accordingly).

Without details about the work done, how much time was spent on the tasks, and how he justified the flat fee charged in Victoria's case, we conclude that Victoria's attorney's testimony "lacks the substance required to uphold a fee award" and thus is legally insufficient. *See id*. at 504-05. Therefore, we sustain Joseph's second issue in part as to the award of attorney's fees. Because attorney's fees for family-violence protective orders are not mandatory, we cannot remand for a redetermination of those fees and modify the protective order accordingly. *See*

18

*In re K.A.M.S.*, 583 S.W.3d 335, 350 n.10 (Tex. App.—Houston [14th Dist.] 2019, no pet.) (collecting cases addressing attorney's fees in suit affecting the parent-child relationship).

We sustain Joseph's second issue in part as to the award of attorney's fees.

CONCLUSION

Having sustained Joseph's second issue in part, we modify the final protective order to delete the following condition ordering that Joseph is:

> 9. Prohibited from possessing a firearm or ammunition, unless Respondent is a peace officer, as defined by section 1.07 of the Texas Penal Code, actively engaged in employment as a sworn, full-time paid employee of a state agency or political subdivision.

We also delete the following paragraph ordering that Joseph attend a BIPP:

> IT IS ORDERED that Respondent register to attend a battering intervention and prevention program accredited under article 42.141 of the Texas Code of Criminal Procedure with AVDA (Aid to Victims of Domestic Violence). Respondent is ORDERED to file proof of registration with the Court on or before August 17, 2020 at 5:00 PM.

Finally, we delete the portion of the final protective order "awarding two thousand and five hundred dollars ($2,500) as reasonable attorney's fees for the services of Ricardo L. Ramos" and modify the protective order to remove the entire paragraph addressing the award of attorney's fees.[4] We affirm the final protective order as

---

[4]The paragraph to be struck is as follows:

Attorney's Fees

The Court finds that Joseph [] should be assessed two thousand and five hundred dollars ($2,500) as reasonable attorney's fees for the services of Ricardo L. Ramos. IT IS ORDERED that Ricardo L. Ramos, 2001 Kirby Drive, Suite 340, Houston, Texas 27019, Harris County, Texas is awarded judgment of two thousand and five hundred dollars ($2,500) for legal services rendered. The judgment, for which let execution issue, is awarded against Joseph []. The amount collected under this judgment shall be paid to Ricardo L. Ramos on or

modified.  *See* Tex. R. App. P. 43.2(b).


/s/    Meagan Hassan
Justice

Panel consists of Justices Wise, Spain, and Hassan (Spain, J., concurring and dissenting).

---

before the sixtieth day after the date this order is signed by cash, LawPay, credit card payment, cashier's check, or money order.