

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————————

No. 02-24-00197-CV

———————————————————

IN THE MATTER OF C.J.

---

On Appeal from Probate Court No. 1
Denton County, Texas
Trial Court No. MH-2024-00394

---

Before Sudderth, C.J.; Kerr and Wallach, JJ.
Memorandum Opinion by Chief Justice Sudderth

**MEMORANDUM OPINION**

Appellant C.J. (Calvin)[1] appeals from a probate court order authorizing the forced administration of psychoactive medication. *See* Tex. Health & Safety Code Ann. §§ 574.070, .108(a). Calvin complains of (1) the probate court's taking judicial notice of his medical records, (2) the probate court's reliance on generally applicable statutory provisions as opposed to those specific to criminal-commitment patients, and (3) the sufficiency of the evidence showing that he lacked the capacity to make a decision regarding the psychoactive medication's administration. Because these challenges are (respectively) waived, contrary to precedent, and within the bounds of the factfinder's discretion, we will affirm.

## I. Background

After Calvin was arrested for obstruction or retaliation, *see* Tex. Penal Code Ann. § 36.06, the criminal court determined that he was incompetent to stand trial, and it ordered that Calvin be committed to an inpatient mental health facility to restore his competency. *See* Tex. Code Crim. Proc. Ann. art. 46B.073. Calvin was subsequently committed to the North Texas State Hospital, and his treating physician filed an application with the probate court to authorize the forced administration of psychoactive medication. *See* Tex. Health & Safety Code Ann. § 574.104.

---

[1]We use an alias for C.J. to protect his privacy.

2

At the hearing on this application, the probate court began by announcing that it would take judicial notice of its file. The court did not specify which documents it considered germane to the hearing, but the documents on file with the court at the time included, among other things, many of Calvin's medical records. Calvin did not object or seek clarification regarding the probate court's taking judicial notice.

Dr. James Shupe then testified. Dr. Shupe had been appointed by the probate court to examine Calvin and shed light on the forced-medication issue. As relevant here, he confirmed that Calvin had been found incompetent to stand trial in a criminal case and was currently receiving treatment at the State Hospital. He stated that Calvin had been diagnosed with bipolar disorder and that his symptoms—which included "paranoia" and "psychosis"—were "severe." Dr. Shupe confirmed that Calvin "lack[ed] the capacity to make decisions regarding the administration of psychoactive medications," explaining that Calvin's "ongoing paranoia" and "the disorganization . . . associated with that" prevented him from "rational[ly] deliberat[ing]." He opined that Calvin could not "actually[,] fully appreciate" the risks and benefits of his proposed treatment plan and "ha[d] some difficulty understanding why he needed the [proposed psychoactive] medication."

After hearing this testimony and other evidence,[2] the probate court found that Calvin "lack[ed] the capacity to make a decision regarding [the] administering of

[2]The other evidence constituted testimony from Calvin and a single trial exhibit: the criminal-commitment order.

3

[psychoactive] medication" and that "treatment with the proposed medication [wa]s in the best interest of the patient," and it ordered the administration of such medication. In so ordering, the probate court noted that it had considered not only the testimony presented at the hearing but also the medical records in its file.

## II. Discussion

In five issues, which we construe as three, Calvin challenges (1) the probate court's taking judicial notice of his medical records, (2) the court's reliance on generally applicable statutory provisions in authorizing the forced administration of medication, and (3) the legal and factual sufficiency of the evidence to support the court's incapacity finding.

### A. Calvin did not preserve his judicial-notice complaint.

First, Calvin argues that the probate court erred by taking judicial notice of the medical records in its file. Calvin concedes that a court is generally permitted to take judicial notice of the contents of its file, but he protests that the probate court was not permitted to take judicial notice of the truth of the disputed factual allegations in his medical records, and he complains that he "had no notice" that such records would be considered and thus no opportunity to object to their admissibility.

As an initial matter, there is no indication that the probate court took judicial notice of the truth of disputed factual allegations in Calvin's medical records. A trial court can take judicial notice of the existence of filed documents without taking judicial notice of the truth of disputed factual allegations therein. *See* Tex. R. Evid.

4

201(b) (providing for judicial notice of "a fact that is not subject to reasonable dispute"); *In re C.S.*, 208 S.W.3d 77, 81 (Tex. App.—Fort Worth 2006, pet. denied) (noting in forced-medication case that "[i]t is appropriate for a court to take judicial notice of a file in order to show that the documents in the file are a part of the court's files, that they were filed with the court on a certain date, and that they were before the court at the time of the hearing," though court "cannot take judicial notice of the truth of any allegations contained in its records").  Although the probate court stated that it would "take judicial notice of the contents of [its] file," and although it noted in its forced-medication order that it had considered Calvin's medical records, neither comment identified the precise scope of the content judicially noticed.  Absent some indication that the content judicially noticed went beyond the permissible bounds, we cannot presume error.  *Cf. Diamond Offshore Servs. Ltd. v. Williams*, 542 S.W.3d 539, 545 & n.13 (Tex. 2018) (recognizing that, under "presumption of regularity," appellate court presumes that trial court proceedings were regular and correct when record is silent or ambiguous, though declining to apply presumption when record was neither); *Johnson v. Kimbrough*, 681 S.W.3d 430, 441 (Tex. App.—Austin 2023, no pet.) (citing *In re D.E.W.*, 654 S.W.2d 33, 36 (Tex. App.—Fort Worth 1983, writ ref'd n.r.e.), for rule that "[a]ppellate courts presume that a trial court, sitting without a jury, applied the correct standard of proof or of law absent a showing to the contrary, and it is the appellant's burden to show that the proper standard was not applied"); *In re E.E.V.*, No. 04-13-00402-CV, 2013 WL 4829171, at *2 (Tex. App.—San Antonio Sept. 11,

2013, pet. denied) (mem. op.) (rejecting appellant's allegation that trial court applied the wrong law when record was silent, explaining that "[t]he presumption of validity is applied on appeal in inverse relation to the amount of knowledge available to the appellate court" and, generally, "will supply by implication every . . . proper application of the law needed to support the judgment" when the record is silent (quoting *Vickery v. Comm'n for Law. Discipline*, 5 S.W.3d 241, 251 (Tex. App.—Houston [14th Dist.] 1999, pet. denied)).

Regardless, Calvin did not object to the probate court's taking of judicial notice, nor did he seek clarification regarding the documents that the probate court was judicially noticing. *See* Tex. R. Evid. 201(c)(1), (e) (providing that court "may take judicial notice on its own" and "[o]n timely request, a party is entitled to be heard on the propriety of taking judicial notice and the nature of the fact to be noticed"). "[A]s with other evidence-admissibility issues, any error in taking judicial notice must be preserved in the court below." *C. G. v. Tex. Dep't of Fam. & Protective Servs.*, No. 03-22-00019-CV, 2022 WL 2069128, at *4 (Tex. App.—Austin June 9, 2022, pet. denied) (mem. op.) (rejecting challenge to taking of judicial notice when trial court "informed the parties at the beginning of the de novo hearing that it was taking judicial notice of 'all of the contents' of the trial before the associate judge" and appellant "failed to object to this procedure at any point during the hearing"); *see* Tex. R. App. P. 33.1(a)(1). By failing to object, Calvin waived his complaint regarding the probate court's consideration of his medical records.

We overrule this issue.

**B.    The probate court could rely upon generally applicable statutory grounds to authorize Calvin's forced medication.**

Calvin next contends that the probate court erroneously relied upon generally applicable statutory grounds for its forced-medication order when, according to him, it was limited to the forced-medication statutes specific to criminal-commitment patients.

The Texas Health and Safety Code identifies several circumstances in which a probate court may enter an order authorizing the forced administration of psychoactive medication. *See* Tex. Health & Safety Code Ann. § 574.106. First, the patient must be either (1) "under a court order to receive inpatient mental health services" or (2) "in custody awaiting trial in a criminal proceeding and [have been] ordered to receive inpatient mental health services in the six months preceding [the] hearing" on the forced-medication issue. *Id.* § 574.106(a). Second, the probate court must find by clear and convincing evidence that (1) "the patient lacks the capacity to make a decision regarding the administration of the proposed medication and treatment with the proposed medication is in the best interest of the patient"; or (2) "if the patient was ordered to receive inpatient mental health services by a criminal court with jurisdiction over the patient, that treatment with the proposed medication is in the best interest of the patient" and that at least one of two conditions (regarding the patient's presenting a danger to himself or others) is satisfied. *Id.* § 574.106(a-1).

7

Because some of these circumstances are tailored to criminal-commitment patients, Calvin argues that the probate court was confined to the criminal-specific statutory grounds for authorizing psychoactive medication and could not rely upon the alternative, generally applicable statutory grounds.[3] In other words, Calvin claims that the probate court could not order forced medication based on findings that he was "under a court order to receive inpatient mental health services" and "lack[ed] the capacity to make a decision regarding the administration of the proposed medication and treatment," *see id.* § 574.106(a)(1), (a-1)(1), but was instead required to find that he was "in custody awaiting trial in a criminal proceeding and [had been] ordered to receive inpatient mental health services in the six months preceding [the] hearing" and that at least one of the two danger-related conditions was satisfied, *see id.* § 574.106(a)(2), (a-1)(2). Extending his logic further, Calvin contends that if the probate court could in fact rely on the generally applicable grounds for its forced-medication order, then the State was required to satisfy the generally applicable requirements for an underlying civil commitment order as well—it could not mix and match by relying on the criminal-specific statutes for Calvin's commitment while relying on the generally applicable statutes to force administration of medication.[4]

---

[3]Calvin further asserts that this limitation is jurisdictional, but he does not cite any authority for that contention.

[4]Calvin does not challenge the validity of the underlying criminal-commitment order.

But this court has repeatedly relied upon the generally applicable statutory provisions to uphold forced-medication orders involving criminal-commitment patients. *See, e.g.*, *In re L.G.*, No. 02-23-00290-CV, 2023 WL 8467378, at *3–6 (Tex. App.—Fort Worth Dec. 7, 2023, no pet.) (affirming forced-medication order in criminal-commitment case based on generally applicable statutory ground in Section (a-1)(1) that patient lacked capacity to make decision regarding medication's administration); *In re J.B.*, No. 02-20-00118-CV, 2020 WL 3981771, at *4 (Tex. App.—Fort Worth June 5, 2020, no pet.) (mem. op.) (affirming forced-medication order in criminal-commitment case under generally applicable statutory ground when trial court made findings under both generally applicable and criminal-specific grounds, and further noting that "[p]roof of either Section 574.106(a-1)(1) or Section 574.106(a-1)(2) alone is sufficient"); *In re T.C.*, No. 02-17-00201-CV, 2017 WL 2838174, at *4 (Tex. App.—Fort Worth July 3, 2017, no pet.) (mem. op.) (affirming forced-medication order in criminal-commitment case on generally applicable ground in Section 574.106(a)(1) when trial court found that both generally applicable and criminal-specific grounds applied and patient challenged only the latter); *In re A.S.K.*, No. 02-13-00129-CV, 2013 WL 3771348, at *2–3 (Tex. App.—Fort Worth July 18, 2013, no pet.) (mem. op.) (affirming forced-medication order in criminal-commitment case based on generally applicable statutory ground in Section (a-1)(1) that patient lacked capacity to make decision regarding medication's administration).  Calvin has

9

not addressed this precedent, nor has he identified a compelling reason to depart from it.

We therefore overrule this issue.

## C. The evidence was sufficient to support the incapacity finding.

In his final issue, Calvin argues that the evidence was legally and factually insufficient to support the probate court's finding that he lacked the capacity to make a decision regarding the administration of the proposed psychoactive medication.[5] *See* Tex. Health & Safety Code Ann. § 574.106(a-1)(1).

Because the State was required to prove this finding by clear and convincing evidence, *see id.* § 574.106(a-1), we review the record to determine whether a reasonable factfinder could have formed a firm belief or conviction that the challenged finding was true. *L.G.*, 2023 WL 8467378, at *3; *T.C.*, 2017 WL 2838174, at *3. To make a legal sufficiency determination, we view the evidence in the light most favorable to the challenged finding; we broaden the scope of review in our factual sufficiency analysis to consider the significance of disputed evidence that a reasonable factfinder could not have credited in favor of the finding. *See L.G.*, 2023 WL 8467378, at *3–4; *T.C.*, 2017 WL 2838174, at *3.

Here, under either view of the record, there was sufficient evidence that Calvin lacked the relevant capacity, i.e., that he lacked the ability to understand the nature

---

[5]We assume without deciding that Calvin's four-sentence discussion of this issue is sufficient to adequately present it for our review. *See* Tex. R. App. P. 38.1(i), 38.9.

and consequences of the proposed psychoactive medication and to make a decision whether to undergo that treatment. *See* Tex. Health & Safety Code Ann. § 574.101(1) (defining "[c]apacity" for purposes of forced-medication statutes). Even Calvin concedes that "Dr. Shupe provided testimony that [he] lacked such capacity"— seemingly conceding the very sufficiency issue he raises.[6] Indeed, when Dr. Shupe was asked whether Calvin "lack[ed] the capacity to make decisions regarding the administration of psychoactive medications," he answered in the affirmative— "yes"—and explained that Calvin's symptoms impaired his ability to fully appreciate the risks and benefits of the proposed treatments and the potential alternatives. *See id.* (defining "[c]apacity" and clarifying that patient's "understand[ing of] the nature and consequences of a proposed treatment, includ[es] the benefits, risks, and alternatives to the proposed treatment"). Although Calvin disputes this testimony on its merits, "[t]he factfinder [wa]s the sole judge of the witnesses' credibility and demeanor." *L.G.*, 2023 WL 8467378, at *3–6; *see A.S.K.*, 2013 WL 3771348, at *2 (affirming forced-medication order and noting that "[t]he fact[]finder, not this court, is the sole judge of the credibility and demeanor of the witnesses"). The probate court's forced-

---

[6]Although there was evidence that conflicted with Dr. Shupe's testimony, the conflicting evidence came in the form of Calvin's testimony, and the factfinder—as the sole judge of the witnesses' credibility—was not required to believe Calvin. *See L.G.*, 2023 WL 8467378, at *4 (explaining that even in factual sufficiency analysis, the appellate court considers disputed evidence that a reasonable factfinder could not have resolved in favor of the challenged finding, but "the factfinder [remains] the sole arbiter of the credibility and weight of the evidence, which we may not second-guess").

medication order reflects that it believed Dr. Shupe, and we must "[d]efer[] to [that] court's credibility determinations." *L.G.*, 2023 WL 8467378, at *3–6 (affirming legal and factual sufficiency of capacity finding supporting forced-medication order in criminal-commitment case).

Given Calvin's concession and the probate court's prerogative to believe Dr. Shupe's testimony, we overrule this final issue.

### III. Conclusion

Having overruled all of Calvin's challenges, we affirm the probate court's forced-medication order. *See* Tex. R. App. P. 43.2(a).

/s/ Bonnie Sudderth

Bonnie Sudderth
Chief Justice

Delivered: July 12, 2024

12